45007.  STONE'S INDEPENDENT OIL DISTRIBUTORS
et al. v. BAILEY.
45008.  MULLIS v. BAILEY.
45009.  REGISTER et al. v. BAILEY.

WHITMAN, Judge. Plaintiff below, J. W. Bailey, brought an action to recover for personal injuries arising out of a pre-dawn collision involving two automobiles, a gasoline tank truck, and a passenger bus.

The evidence adduced at the trial shows that the incident occurred on the Mark Fitzpatrick-Jim Duncan Bridge which crosses the Ocmulgee River between Houston and Twiggs Counties. The bridge crosses the river in an east-west direction. It is 24 feet wide by 1,054 feet long and accommodates two lanes of traffic.

The plaintiff was not in a car when he was injured. He had been traveling west on the bridge riding in a car driven by Charles Wood. They had almost reached the opposite end of the bridge when they came upon a wrecked car which was upright but was sitting across the road with its front end up against their side of the bridge and blocking their lane of traffic. Wood brought his car to a "normal stop" and then went around the

car to the left and when they came abreast of it they could hear someone "hollering for help." The plaintiff suggested that they go ahead and pull off the end of the bridge and park on the side of the road, which they did. Both the plaintiff and Wood ran back out on the bridge to the wrecked car. Several other cars, traveling west, came around the wreck and proceeded on off the bridge. It was pre-dawn and dark. The front end of the wrecked car was against the side of the bridge. Plaintiff went around to the east side of the car where defendant Charlie Mullis was leaning over on the seat.

With regard to the Mullis wreck, it was established that Mullis had been traveling east and that just before he reached the bridge he dozed off to sleep and crashed into a steel guardrail on the southern shoulder of the roadway, lost control of his car, crossed the highway centerline, was struck by one Arnold coming from the opposite direction, and then struck the north side of the bridge. The Mullis wreck was 85 feet out onto the bridge. He sustained serious injury and was lying helpless in the wreckage crying for help. He testified that he seemed to be choking in his own blood and he could remember plaintiff Bailey standing by him holding up his head and wiping blood off his face.

While plaintiff Bailey was ministering to defendant Mullis, Charles Wood walked some 20 or 25 feet further out on the bridge to remove some debris from the roadway.

Defendant James Ross, who was traveling east, drove his gasoline tank truck, which was 45 feet long, onto the bridge and stopped it adjacent to the Mullis wreck. Ross testified that he could see a man close to the wreck who looked like he had a handkerchief wiping someone's face; that someone told him an ambulance was on the way "so I started on off"; that he had moved away about 50 feet and was going six or seven miles per hour when he noticed the lights of a car coming over the crest or the hump in the bridge up ahead of him, and that the car began "sliding" and it looked like it was going to hit the cab of the truck, but it did not, it hit or bumped the side of his truck and he stopped when he felt the contact. The evidence shows that the car just mentioned was a Mercury automobile traveling

west and that it collided with the Mullis wreck. The Mercury was driven by defendant Dallas Rogers and contained three passengers.

Also traveling west a distance behind the Rogers Mercury was a Rentz Bus Lines passenger bus driven by defendant Gerald NeSmith. There were a number of passengers on the bus. The evidence is that the bus made contact with the Mercury.

Plaintiff Bailey, who as previously mentioned was standing on the east side of the Mullis wreck ministering to Mullis, was injured either by the Mercury or the bus or both. He was found lying between the front of the Mercury and the Mullis wreck.

Plaintiff Bailey named Mullis (who first wrecked on the bridge); Ross (driver of the tank truck) and his principal; Rogers (driver of the Mercury); and NeSmith (driver of the bus) and his principals as joint defendants in his complaint, alleging that the proximate cause of his injuries was the joint and concurring negligence of all the defendants.

The following negligence was alleged: (*Mullis*) "Defendant Charles Mullis was negligent in creating a situation from which he knew or, in the exercise of ordinary care should have known, that it would be necessary for him to be rescued; and he was guilty of the following acts of negligence in creating said situation: (a) In going to sleep while driving his vehicle on the highway. (b) In crashing his vehicle into the northerly side of the bridge and thereby blocking the lane of the highway designated for westbound traffic." (*Ross*) "Defendant James Carl Ross, Jr., whose negligence is imputable to defendant Stone's Independent Oil Distributors, Inc., by virtue of facts aforesaid, was negligent in the following several particulars: (a) In stopping his tanker truck on the bridge adjacent to or in the immediate vicinity of the wreckage of the Mullis vehicle so as to effect a blockage of the highway. (b) In placing his vehicle in such a position on the bridge that it could and did deflect into plaintiff an oncoming vehicle whose driver was endeavoring to avoid the Mullis wreckage. (c) In failing to dim his lights on the approach of the NeSmith vehicle so as to avoid blinding defendant NeSmith and thus interfering with and obstructing his vision of perils ahead, all in violation of the laws of Georgia

which constitutes negligence per se. . ." (*Rogers*) "Defendant Dallas Thomas Rogers was negligent in the following several particulars: (a) In failing to keep a proper lookout in the direction in which he was traveling. (b) In failing to stop his vehicle before becoming involved in the collision hereinabove described. . ." (*NeSmith*) "Defendant Gerald W. NeSmith, whose negligence is imputable to defendant Rentz Bus Lines by virtue of facts aforesaid, was negligent in the following several particulars: (a) In failing to keep a proper lookout in the direction in which he was traveling. (b) In failing to stop his vehicle when he became blinded by the headlights of the tanker truck and knew that he had an imperfect view of the roadway ahead. (c) In failing to stop his bus before colliding with the Mercury automobile and thereby injuring plaintiff. . ."

Many witnesses testified at the trial, including the defendant drivers of the four vehicles; three who were passengers in the Rogers Mercury; several who were passengers in the bus; and Charles Wood who was with plaintiff Bailey and had walked out to the Mullis wreck with him. The evidence was conflicting as to the time intervals between the several events. It was conflicting as to where Ross first stopped his tank truck in relation to the Mullis wreck; as to whether the rear end of the tank truck had cleared the Mullis wreck at the time the Rogers Mercury came on the scene; and as to whether Ross had his headlights on "high beam," causing a blinding effect, or whether he had dimmed his headlights to the oncoming vehicles.

The evidence conflicts as to when Rogers, driving the Mercury, first could see and did see the Mullis wreck ahead; as to how fast he was going; as to when he first applied his brakes; as to whether he could have stopped without contact; whether he ever struck the tank truck; and as to whether his involvement with the Mullis wreck involved any contact with or caused any injury to plaintiff Bailey.

The evidence conflicts as to when NeSmith driving the bus, first could have seen or did see the condition ahead; as to whether his vision became impaired by some bright lights ahead, and whether he reacted by slowing up the bus or continuing on; as to how fast the bus was traveling and the distance it was be-

hind the Mercury; as to whether NeSmith could have stopped before hitting the Mercury; and as to whether the contact between the bus and the Mercury was only a "slight tap," imparting little or no movement to the Mercury, or whether it was an impact with such force that it caused some or all of the injuries which plaintiff Bailey suffered.

The jury returned a verdict for the plaintiff against all the defendants jointly. All the defendants, except Rogers, have appealed. *Held:*

1. The appellants in Appeal No. 45007 (Stone's Independent Oil Dist., Inc. and James C. Ross, Jr.) and the appellants in Appeal No. 45009 (G. P. Register and Burtz V. Register, partners, d/b/a Rentz Bus Lines, and Gerald NeSmith) contended in motions for directed verdict made at various stages of the trial and by motions for judgment n.o.v. that the Houston Superior Court was without jurisdiction over them. The only resident defendant in the case was Mullis.

In support of this position these appellants first argue that the evidence simply does not show that Mullis was negligent in any respect and that without a resident defendant who is liable there is no basis for entry of a judgment against nonresident defendants, notwithstanding the latters' negligence and liability in the matter. Second, it is argued that even if Mullis had been negligent, his negligence was complete and static and too remote to constitute a concurring proximate cause of the injuries, which if true would eliminate Mullis from liability and accordingly eliminate the basis for entering a judgment against the nonresidents. Third, it is argued that even if Mullis was negligent and such was a proximate cause of plaintiff's injuries, the evidence demands a finding that the Mullis negligence simply did not concur or combine naturally with any subsequent negligence of the nonresident defendants so as to constitute any joint tortfeasor relationship among them, and that, for this reason also, there was no basis for jurisdiction in Houston County except as to Mullis.

It is true that where nonresident defendants are joined with a resident defendant, jurisdiction over the nonresidents vanishes if the resident is discharged. But we can not say that the evi-

dence in this case demanded a finding of no liability in Mullis or demanded a finding that there could exist no joint tortfeasor relationship among the defendants. There was some evidence in this case to support the alleged negligence attributed to each defendant. The jury was authorized to find that all the defendants were negligent in the manner alleged and that such negligence concurred and combined to proximately cause the plaintiff's injuries. In this State, notwithstanding the law elsewhere, it is not necessary that there be intentional concert or simultaneous action among those sought to be held jointly liable for injury. All that is required is that negligent acts, although separate and independent, be found to have combined naturally and directly to produce a single injury. *Boner v. Soltero,* 110 Ga. App. 517 (1) (139 SE2d 162); *City of Buford v. Hosch,* 104 Ga. App. 615 (122 SE2d 287); *Guy v. Blanchard Funeral Home,* 85 Ga. App. 823, 827 (70 SE2d 117); *Callahan v. Cofield,* 61 Ga. App. 780 (1-5) (7 SE2d 592); *Longino v. Moore,* 53 Ga. App. 674 (187 SE 203); *Akin v. Brantley,* 26 Ga. App. 326 (106 SE 214). The statement in *Close v. Matson,* 102 Ga. App. 663 (2) (117 SE2d 251), cited by appellants, which intimates that a concert of action is required to find a joint tortfeasor relationship, is against the weight of authority and has been criticized as dictum. See *Boner v. Soltero,* supra.

Some further discussion is in order on the assertion that even when negligence by Mullis is assumed, it would be too remote, complete and static to be considered as a concurring proximate cause with any other negligence as a matter of law. The recent case of *Hodge v. Dixon,* 119 Ga. App. 397 (167 SE2d 377), is heavily relied upon in support of the position that Mullis would not, under the circumstances in the present case, be liable to plaintiff Bailey as a matter of law. In the *Hodge* case it was held that a widow's complaint for the wrongful death of her husband, a policeman, stated no claim for relief against the named defendants. There was a collision between two motorists at a street intersection. The policeman came to the scene in the regular course of his duties and began to direct traffic to prevent the street and intersection from being blocked. He was struck and killed by another motorist while doing so. The

widow sued the two motorists who had the original collision, but did not make the motorist who thereafter struck and killed the policeman a party to the suit. The issue of liability of the named defendants was raised by a motion to dismiss for failure to state a claim. This court held that where a petition affirmatively shows and assigns the proximate cause of the injuries complained of to the act of a third person and not to the negligence of the parties sued, the complaint states no claim for relief even under notice pleading; that the facts as plead required a finding ·as a matter of law that the subsequent act of the third motorist was an independent cause of the injury and was not a "normal reaction to the stimulus of a situation created by negligence." It is argued that if the first two motorists in *Hodge* were not liable for the death of the policeman who had come to the scene to direct traffic because of their negligence, then by analogy Mullis would not be liable to Bailey. The *Hodge* case is not applicable, first, because of the nature of that case *as plead,* and, second, because it did not involve the element of rescue as does this case. Where one's own negligence places him in peril thereby inviting rescue, such is negligence and a proximate cause of any injuries to one who, in the exercise of ordinary care for his own safety, short of rashness and recklessness, is effecting the rescue. The chain of causation from the negligence remains intact. See *Walker Hauling Co. v. Johnson,* 110 Ga. App. 620, 624 (139 SE2d 496), and cit. The jury would have been authorized to find Mullis negligent as to plaintiff Bailey.

The cases of *Tucker v. Star Laundry & Cleaners,* 100 Ga. App. 175 (110 SE2d 416); *Millirons v. Blue,* 48 Ga. App. 483 (173 SE 443); *City of Albany v. Brown,* 17 Ga. App. 707 (88 SE 215), and *Close v. Matson,* 102 Ga. App. 663, supra, all involve alleged factual situations, clearly distinguishable from that in the present case, in which particular adjudications were required as a matter of law. We can not say as a matter of law from the evidence in the present case that any one defendant was or was not negligent, or that any particular act, if negligence, was or was not a sole or concurring proximate cause of the injuries allegedly sustained. Whether there has been negli-

gence and whether there was causal relation to alleged injuries are questions of fact for jury resolution, except when the circumstances are such that they will support but one result. Such was not the case here. The trial court did not err in denying the motions for directed verdict and motions for judgment n.o.v.

2. Stone Oil and Ross objected to and enumerate as error the charge of the court on the doctrine of rescue. The exception to the charge was on the ground that under the evidence no need existed for any continuing effort on the part of plaintiff Bailey to "effectuate a rescue"; that there was no evidence plaintiff Bailey was in any imminent danger of sustaining injury from Mullis' negligence when he stopped and went to Mullis; and that there was no burning or exploding automobile, rather the situation was one completely outside the realm in which the rescue doctrine has its applications.

There was no error. The evidence that defendant Mullis was crying for help in a wrecked automobile blocking one lane of the bridge and that he was choking in his own blood authorized a charge on the rescue doctrine as between Bailey and Mullis, and it was so limited. The jury could find that Mullis by his negligence had placed himself in a dangerous situation which had imperiled his life and invited rescue. *Walker Hauling Co. v. Johnson,* 110 Ga. App. 620, supra. Generally, see 65A CJS 83, Negligence, § 124 (1966).

3. Mullis contends by all his enumerations of error that the doctrine of independent intervening cause applied to his particular situation and that the evidence required a finding that the negligent acts of third parties did in fact intervene as the actual, immediate, proximate cause of plaintiff's injuries.

The finding Mullis seeks was authorized but it was not demanded by the evidence. The jury was fully and correctly charged on the doctrine of independent intervening cause. They were also authorized by the evidence and instructed by the court to consider the doctrine of rescue, the effects of which have been set forth in Division 1.

The trial court did not err as to Mullis in overruling his motion to dismiss for failure to state a claim, motion for directed verdict, motion for new trial, and motion for judgment n.o.v.

4. Those appellants associated with the bus requested the trial court to charge the jury, in effect, that if they should find that the Rogers Mercury had caused substantial injuries to the plaintiff before the bus arrived and collided with the Rogers Mercury, then they would not be jointly liable with Rogers as to these particular injuries, and that a verdict against them would not be authorized, even though the jury should find that the collision between the bus and the Rogers Mercury may have caused some additional injury to the plaintiff.

There was no error in refusing this request or the principle which it embodies.

No evidence has been called to our attention which would serve as any reasonable basis for dividing or apportioning the plaintiff's injuries among the defendants. "Where a single injury results from the concurrent negligence of two persons, they are joint tortfeasors and may be sued jointly or severally, and a recovery had against either or both. In such case the concurring negligence of one is no excuse or defense to the other." *Akin v. Randolph Motors,* 95 Ga. App. 841 (4) (99 SE2d 358); *Terry v. Central of Ga. R. Co.,* 108 Ga. App. 204 (1) (132 SE2d 573). Generally, see 65 CJS 1117, Negligence, § 102 (1966).

5. The appellants associated with the bus requested the trial court to charge the jury to the effect that plaintiff Bailey had the burden of establishing by a preponderance of the evidence that he was injured by a collision between the bus and the Rogers Mercury; that such collision must be shown by a preponderance of the evidence to have resulted from the negligence of both defendants and by a preponderance of the evidence to have been the proximate cause of plaintiff's injury; and that "[i]f the evidence fails to show by a preponderance of the evidence that Mr. Bailey received injury as the result of such collision, it would be your duty to return a verdict in favor of the defendants Rentz Bus Lines and NeSmith."

This request was given in full and in the exact language requested. There was no error in not charging two similar requests which were repetitive in substance.

6. The court's failure to charge on accident is enumerated as error by those appellants associated with the bus and the tank truck.

"'An "accident" in its strict sense implies the absence of negligence, for which no one would be liable.' . . 'In its proper use the term "accident" excludes negligence; that is, an accident is an event which occurs without the fault, carelessness, or want of proper circumspection of the person affected, or which would not have been avoided by the use of that kind and degree of care necessary to the exigency and the circumstances in which he was placed. . .'" (Citations omitted.) *Morrow v. Southeastern Stages*, 68 Ga. App. 142, 146 (22 SE2d 336).

An "accident," in law, refers to an event not proximately caused by negligence but which instead arises from an unforeseen or unexplained cause. In the present case there were a number of actions and forces and a unique sequence of events involved in the occurrence. The importance and the effect of each were disputed to be sure. But there was nothing falling in the unforeseeable or inexplicable category. There were grave issues raised by the pleadings and the evidence as to whether what transpired involved any negligence; whether the plaintiff was injured by failure to exercise ordinary care for his own safety; whether the plaintiff was negligent and more so than the defendants; whether the negligence of the defendants, if any, could have been avoided by the plaintiff; whether any negligence of the defendants, assuming such, was a proximate cause of plaintiff's injury, or whether it was simply too remote to figure in the chain of causation. The jury was charged repeatedly that they must find a defendant to have been negligent; that it must have been greater than any negligence of the plaintiff; and further that such negligence, if any, was a proximate cause or concurring proximate cause of injury before they could find against a defendant.

We do not regard this case, in view of the pleadings or the evidence, as one involving "accident." We have reviewed all the evidence and the entire charge. The jury was fully and correctly charged as to all the defenses raised by the pleadings and the evidence. There was no error in not charging on "accident."

7. There was no error in not charging a request which would have instructed the jury that a driver, driving within the requirements of the law and exercising ordinary care, is not required

to be able to stop within his visual range and his mere inability to do so after an obstruction is revealed *is not negligence.* Such an instruction would usurp the function of the jury. The jury was charged that failure to stop before making contact is not in itself sufficient to show negligence.

8. There was no error by the trial judge, over objection, in allowing the jury to step out of the jury box to obtain a better view of a scale model of the bridge in question which had been admitted in evidence. The cases of *Peterson & Lott v. Lott,* 11 Ga. App. 536 (75 SE 834), and *Leverette v. Awnings, Inc.,* 97 Ga. App. 811 (104 SE2d 686), holding that it is error to allow the jury to leave the courtroom to inspect personal property which is the subject matter of the suit, have no application here.

9. The remaining enumerations of error of those appellants associated with the bus are addressed to a failure to give two requests to charge and to an exception to a portion of the charge as given. We have reviewed the requests to charge and that portion of the charge complained of. We find no error.

10. Enumerations of error numbers 11 and 13 by Stone Oil and Ross have no merit. Enumerations of error numbers 9 and 10 contend that portions of the charge on (1) the rule of ordinary care applicable to a plaintiff and his duty to avoid the negligence of another, and (2) the rule of comparative negligence when both a plaintiff and defendant are found negligent, were not accurate statements of the law under the evidence in the case. We find no error.

*Judgment affirmed. Bell, C. J., and Quillian, J., concur.*

ARGUED JANUARY 6, 1970—DECIDED JUNE 11, 1970—REHEARING DENIED JULY 29, 1970—

*Harris, Russell & Watkins, Joseph H. Davis,* for Stone Oil.
*Jones, Cork, Miller & Benton, E. Bruce Benton,* for Mullis.
*Martin, Snow, Grant & Napier, George C. Grant,* for Register.
*Adams, O'Neal, Steele, Thornton, Hemingway & McKenney, H. T. O'Neal,* for Bailey.