## A05A0581. HALL v. THE STATE.
### (614 SE2d 844)

SMITH, Presiding Judge.

Ronald Hall was indicted by a DeKalb County grand jury for murder, felony murder, and aggravated assault. A jury found him guilty of aggravated assault and two counts of the lesser included offense of voluntary manslaughter.[1] His amended motion for new trial was denied, and he appeals, asserting five enumerations of error. We find no error and affirm.

1. Hall asserts the general grounds. Construed to support the jury's verdict, the evidence shows that the victim was killed in a dispute over a woman, who was the mother of the victim's son but had been intimate with Hall in the past. On the night in question, the victim was present when Hall called the woman on her cell phone. Believing that she "was still messing with this guy," the victim grabbed the phone from the woman and told Hall, "If me and you get into it, you going to go to jail, and I'm going to go to jail, and the female still be out here doing what she want to do." Shortly after this conversation, Hall left threatening messages on the woman's phone. These messages were played for the jury. During Hall's testimony, he admitted to threatening to kill the victim. He also testified that he and the victim had two confrontations in the past, during which he claimed the victim threatened him.

Within a few minutes, Hall appeared on the scene and grabbed the woman by her shirt. After some further conversation, Hall hit the woman in the face with his cell phone, and the victim "stepped in" and began fighting Hall. The woman testified that the victim was hitting

---

[1] The trial court merged the convictions for sentencing purposes and sentenced Hall on one count of voluntary manslaughter.

Hall "with both hands." While the victim was hitting Hall, the woman saw Hall "let his hand down, and that's when I heard the first gunshot." She ran away as three more shots were fired. She testified positively that the victim did not have a gun in his hands during the fight and did not own a gun, but that Hall owned a gun and had displayed it to her in the past. No gun was found at the scene. The medical examiner testified that one wound to the victim's abdomen was inflicted at close range, but the second abdominal wound and the fatal head wound were inflicted from a greater distance, in the medical examiner's opinion at least two-and-a-half to three feet away. The medical examiner testified that the fatal head wound was incapacitating and that the victim would have been rendered unconscious.

Hall contends that the State failed to prove beyond a reasonable doubt that he "actually fired the gun or otherwise caused the death of [the victim]." Hall testified that he did not have a gun that night, that the victim pulled the gun on him and the gun went off while they were struggling over it, and that after shots were fired "[w]e both hopped up. He ran one way, and I ran the other way." But this version of events was inconsistent with the testimony of other witnesses. "Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation, punctuation and footnote omitted.) *Hamilton v. State,* 250 Ga. App. 568, 569 (552 SE2d 511) (2001). Viewed in the light most favorable to the verdict, the evidence was sufficient to authorize a rational trier of fact to find Hall guilty of voluntary manslaughter beyond a reasonable doubt under *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In a novel enumeration of error, Hall asserts that the grand jury proceedings were improper and void because an investigator employed by the district attorney's office testified before the grand jury. He claims that, as an agent of the district attorney, the investigator is bound by the ethical and legal standards that prohibit the district attorney from testifying before the grand jury. Hall has provided no law in support of this assertion; he merely cites decisions holding that an attorney is generally not permitted to appear as both witness and advocate in the same cause.[2]

This argument is without merit. "[A]n agent may not delegate his authority to another unless specially empowered to do so." OCGA

---

[2] Exceptions to this general rule are not relevant here. See, e.g., *Timberlake v. State,* 246 Ga. 488, 500 (7) (271 SE2d 792) (1980) (allowing prosecutor to testify as rebuttal witness within discretion of trial court).

§ 10-6-5. "[F]or reasons that are entirely obvious, this rule is usually given a very strict, if not a literal, application in case of public officers. The discretionary powers conferred upon public agents are in the nature of a trust and unless authorized so to do the persons chosen can not delegate them." (Citation and punctuation omitted.) *Deariso v. Mobley*, 38 Ga. App. 313, 322 (2) (143 SE 915) (1928).

An unlicensed individual may not practice law. OCGA § 15-19-51. Nor may a witness generally testify to another's statement; this would constitute inadmissible hearsay unless permitted "in specified cases from necessity." OCGA § 24-3-1 (a), (b). Hall has not pointed to any authority that would empower a district attorney to delegate either the practice of law or the giving of testimony within his personal knowledge to a nonattorney agent. It follows that Hall has failed to show that the State's witness is the agent of the district attorney for these purposes, or that his testimony violates the rule forbidding counsel from acting as witness and advocate in the same cause. As the State points out, such a rule would render inadmissible the testimony of any employee of the district attorney's office who happened to be a victim of crime, as well as the testimony of any expert witness retained by an attorney.

3. Hall contends the trial court erred in its charge to the jury by failing to give his requested charges on criminal act, intent, and prior difficulties, and by giving charges on mutual combat and justification.

Hall complains that the trial court erred in charging the principles of mutual combat, contending that there was no evidence he was armed. Hall misstates the facts, as some evidence was presented from which a jury could conclude that he brought a firearm to the confrontation with the victim, used it, and carried it away with him, as well as his own testimony that he and the victim struggled for control of the firearm. But in any event *Sinkfield v. State*, 266 Ga. 726 (470 SE2d 649) (1996), cited by Hall, makes clear that he cannot complain regarding a charge on mutual combat because it redounded to his advantage: "Moreover, we note that a charge on mutual combat enables a jury to find a criminal defendant guilty of voluntary manslaughter in lieu of murder. Hence, the mutual combat charge could only have benefitted [Hall], and we reject this enumeration as meritless." (Citation and footnote omitted.) Id. at 727 (2).

Hall also complains that the trial court erroneously gave the State's requested charge on justification. In connection with the charge on self-defense, the trial court informed the jury that an accused is not justified in committing an assault to avenge past wrongs. This instruction is a correct statement of the law. *Ucak v. State*, 273 Ga. 536, 538 (4) (544 SE2d 133) (2001). Hall insists that the charge was not adjusted to the evidence. But evidence was presented

that Hall had previous confrontations with the victim over a woman, and that he had threatened the victim via the woman's cell phone before driving to the scene and confronting them. "To the extent that the defendant's subsequent acts may have been motivated by resentment over this perceived slight, justification was not a viable defense, as the trial court correctly instructed the jury. [Cit.]" Id. at 539 (4).

With respect to Hall's remaining complaints concerning the trial court's instructions to the jury,

> it is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error. In addition, it has long been the rule in this state that a request to charge must be correct, even perfect, and that it must also be legal, apt, precisely adjusted to some principle involved in the case and be authorized by the evidence. Furthermore, it is never error to refuse to charge on an issue which is not adjusted to the evidence.

(Citations, punctuation and footnotes omitted.) *Jackson v. State*, 258 Ga. App. 806, 811 (5) (575 SE2d 713) (2002). Moreover, "[t]he court is not required to instruct the jury in certain language so long as the substance of the principle is clearly stated. [Cit.]" *Casas v. State*, 193 Ga. App. 53, 54 (387 SE2d 20) (1989).

Hall's requested instructions on prior difficulties and intent were amply included in the pattern instructions given by the trial court, which covered in substance the charges requested by Hall. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (3rd ed.), pp. 27, 33-34. In addition, the trial court instructed the jury with respect to the specific intent required for the offenses of murder, felony murder, voluntary manslaughter, and involuntary manslaughter, as well as the principles of mutual combat, self-defense and justification, reckless conduct, and misapprehension of fact. Considering the trial court's charge to the jury as a whole, it correctly stated the applicable principles of law, was supported by the evidence, was not misleading, and was not erroneous.

4. Hall asserts that the trial court improperly communicated with the jury outside the presence of Hall and his counsel regarding the return of a verdict by the jury, in that the trial court allegedly sent a message by the bailiff regarding the return of the verdict form. However, in its order on Hall's motion for new trial, the trial court expressly found no evidence that such a communication occurred in Hall's absence, and further found that "it did not in this case and has never called for the return of a verdict until the parties and their counsel are present in the courtroom." Hall has presented no evidence

to contradict the trial court's finding. He argues from the transcript that the defendant and his counsel were not present during the initial communication, because the court had declared a recess and because the communication was not taken down by the court reporter in "real time." But we may infer from these notations on the transcript only that the court reporter was not present, not the whereabouts of the defendant and his counsel, and such mere inferential speculation cannot stand against the positive and unequivocal statement of the trial court that no such communication occurred in the absence of Hall or his counsel.[3]

5. Finally, Hall claims ineffective assistance of counsel in two respects: failure to move to quash the indictment and failure to object to the trial court's communication with the jury. But the allegations of error underlying these claims of ineffective assistance were rejected in Divisions 2 and 4, above. "Failure to raise a meritless objection cannot constitute ineffective assistance of counsel." (Citations and punctuation omitted.) *Wright v. State*, 265 Ga. App. 855, 858 (1) (c) (595 SE2d 664) (2004).

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED MAY 9, 2005.

*Charles H. Frier*, for appellant.
*Jeffrey H. Brickman, District Attorney, Robert M. Coker, Assistant District Attorney*, for appellee.

---

[3] Hall's counsel testified at the hearing on the motion for new trial that he had no independent recollection of the circumstances surrounding the communication.