A05A2067. McGRATH v. THE STATE.

(627 SE2d 866)

ANDREWS, Presiding Judge.

James Guido McGrath appeals from the trial court's denial of his motion for new trial following his conviction by a jury of first degree vehicular homicide.[1] Finding no error, we affirm for the reasons that follow.

---

[1] McGrath was convicted of Count 2, causing the death of Amy Burroughs-Brown by a violation of OCGA § 40-6-390 (reckless driving) by driving after having used methamphetamine and driving on the wrong side of the interstate and failing to pull off the road to avoid a collision; Count 9, reckless driving in reckless disregard of the safety of other motorists by driving south in the northbound lanes of Interstate 85 (I-85) after having used methamphetamine; and Count 10, driving on the wrong side of a divided highway. Counts 9 and 10 were merged with Count

1. McGrath's first enumeration is that the trial court erred in denying his motions for directed verdict on the vehicular homicide count and in failing to find that the evidence of vehicular homicide was legally insufficient.

The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction. *Hash v. State*, 248 Ga. App. 456, 457 (1) (546 SE2d 833) (2001). We view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998). We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the evidence was that, around 6:30 a.m. on October 6, 2001, professional truck driver Charles Sharp was pulling fully loaded double trailers northbound in the right lane of I-85 in Franklin County. The weather was dark, foggy, and misty, resulting in poor visibility. Just before the Highway 51 overpass, Sharp saw in his rearview mirror a white Infiniti driven by Sumit Kar move over to the left lane in order to pass. Sharp saw Kar pull out and get even with his truck's rear wheels. As he looked forward, Sharp saw the oncoming headlights of McGrath's Chrysler Sebring in Kar's lane. As soon as Kar came into the left lane, he saw lights right in front of him. Sharp saw Kar's headlights dip as if he were attempting to brake immediately prior to the collision. Sharp observed no action by the oncoming Sebring to avoid the collision.

Kar's Infiniti ended up sideways in the left lane, with a portion of the rear end extending into the right lane.[2] The Infiniti was disabled and Kar could not get out. McGrath's Sebring ended up approximately 30 yards south of the Infiniti, still pointed south and wedged against temporary concrete construction barriers in the grassy median.

Everett was driving his minivan up I-85 with his wife and daughter when he saw the head-on impact of the Sebring and Infiniti. What brought it to his attention was "like a light show" caused by the cars impacting and spinning. He pulled left onto the grassy median about 50 to 75 yards from McGrath's car and went to check on McGrath, but found him incoherent. In Everett's opinion, McGrath was "[d]runk, high, total shock, just not coherent." Everett then went

---

2 at sentencing. He was acquitted of the other counts.

[2] Kar suffered numerous broken bones resulting in several surgeries.

to Kar and let him use his cell phone to call his wife and employer. In the meantime, Everett's wife had moved the minivan some distance ahead of the crash beyond the overpass and pulled over into the right emergency lane.

Stanley Thompson, another tractor-trailer driver, was also heading north on I-85 in the right lane when he noticed "a little red light" ahead and began to slow his truck. The light was the taillight of Kar's vehicle, which extended into the right lane. Thompson managed to slow sufficiently to go around Kar's vehicle in the emergency lane and pulled off to assist, parking his truck behind Sharp's truck which was parked beyond the overpass. He waited for Sharp and they both went back to the wreck to assist. Sharp gave Thompson a small flashlight and Thompson went beyond McGrath's car in an effort to warn oncoming traffic and Sharp stayed at the accident site. Thompson saw Everett standing at McGrath's car as he went by.

Janet Johnson and Amy Burroughs-Brown, both nurses, were traveling to Boone, North Carolina, to visit a sick friend. As they topped a rise in the roadway, Johnson saw a big cloud of smoke in the middle of the road, which caused her to slow down. She asked one of the men there if anyone was injured. He told her there were injuries, but advised her to move her car further from the wreck because of the dangerous conditions. Burroughs-Brown got out of the car and walked behind it to get to Kar while Johnson moved the car.

Everett was still with Kar, but left when Burroughs-Brown came up and began assessing him. As he started back toward McGrath's car, Everett noticed an oncoming car in the left lane headed for Kar and Burroughs-Brown at a fast pace. Realizing the car was not slowing, Everett ran and jumped over the temporary concrete barriers and saw Hikko Ramirez's Toyota MR2 crash into Kar and Burroughs-Brown. Sharp also saw the MR2 approaching in the left lane at a high rate of speed and did not notice any attempt to slow down or hear any evidence of braking. Concerned for his own safety, Sharp ran across the two northbound lanes and jumped over the temporary concrete barriers. He turned around to see Ramirez's car pushing Kar's car down I-85 with Burroughs-Brown trapped between the two cars. After she fell to the pavement, two other automobiles ran over her. Burroughs-Brown died immediately. Kar's and Ramirez's cars came to rest at the edge of the left lane on the shoulder against the concrete barriers.

Thompson, who did not see the impact, did see Ramirez approaching at a high rate of speed in the left lane. Based on his experience as a truck driver, what he saw approaching the wreck in the right lane, and what he had observed after stopping, Thompson opined that, had he been in the left lane, he would not have been able to see the red

light that alerted him to the wreck and would not have been able to stop before striking Kar and Burroughs-Brown.

Sharp, based on his twenty years as a truck driver with over two million safe miles driving, opined that, because of the way Kar's vehicle was positioned in the left lane, the fog, the darkness, lack of illumination, and weather conditions including wet pavement, Ramirez could not have avoided the collision.

Sergeant Scott of the Georgia State Patrol, an accident reconstructionist, investigated the accident. He concluded that, based on the conditions at the wreck site, that Ramirez's speed was not a factor because, even had Ramirez been going the speed limit,[3] there was insufficient room for him to stop after he was able to see Kar's vehicle.

Sergeant Scott also interviewed McGrath several hours later at the hospital where he was being treated for his injuries. McGrath had been visiting a friend in Atlanta for several days during which he and his friend ingested crystal methamphetamine. McGrath had done about two grams of crystal methamphetamine during the visit as well as marijuana the day before the wreck. McGrath snorted the methamphetamine and had been awake for three and a half days before deciding to drive back home to South Carolina at 2:00 a.m. on October 6, 2001. He said he had last snorted methamphetamine four to four and a half hours before leaving Atlanta. After driving part way up I-85, McGrath pulled into a rest area and slept for a while. Upon awakening, McGrath got back on I-85 by an entrance to the rest area and headed south in the northbound lanes of the interstate.

Sergeant Scott, based on his training and his observation of McGrath during the interview, opined that, at the time of the interview, McGrath was under the influence of methamphetamine.

Following the State's case and again at the close of all the evidence, McGrath made motions for directed verdict on the ground that McGrath's actions were not the direct cause of Burroughs-Brown's death and that there were intervening causes.

McGrath is correct that, in order to be convicted of vehicular homicide by recklessly driving in violation of OCGA § 40-6-390, his conduct must have caused the death of Burroughs-Brown. *Pitts v. State*, 253 Ga. App. 373, 374 (1) (559 SE2d 106) (2002). "This requires showing that 'the defendant's conduct was the "legal" or "proximate" cause, as well as the cause in fact, of the death.' [Cit.]" *Id.*

> An injury or damage is proximately caused by an act or a failure to act whenever it appears from the evidence in the

---

[3] Ramirez told Sergeant Scott that he was going eighty mph, ten miles over the speed limit, and only saw Kar's vehicle within fifty yards of it.

case that the act or omission played a substantial part in bringing about or actually causing the injury or damage and that the injury or damage was either a direct result or a reasonably probable consequence of the act.

(Citation omitted.) *Ponder v. State*, 274 Ga. App. 93, 95 (1) (616 SE2d 857) (2005).

What constitutes proximate cause is "undeniably a jury question and is always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy, and precedent." (Citations and punctuation omitted.) *Zwiren v. Thompson*, 276 Ga. 498, 500 (578 SE2d 862) (2003). See also *McCannon v. Wilson*, 267 Ga. App. 815, 818 (3) (600 SE2d 796) (2004).

Here, intervening proximate causes, Ramirez's speeding and Burroughs-Brown's placing herself in a dangerous situation, were argued to the jury by McGrath. Following the charge to the jury on proximate cause, intervening causes, as well as the defense of accident, the jury rejected McGrath's arguments. We cannot conclude that the jury's conclusions were insupportable as a matter of law. See *Murphy v. State*, 272 Ga. App. 287, 289 (2) (612 SE2d 104) (2005).

Two recent cases support our conclusion. In *Corbett v. State*, 277 Ga. App. 715 (627 SE2d 365) (2006), Corbett, driving while intoxicated to the extent it was less safe for him to drive, struck and killed Hernandez, who had been standing in the middle of the dark roadway. Corbett's defense was accident, based on the dark conditions, Hernandez's location, and his inability to avoid hitting Hernandez. As we pointed out,

as long as the defendant's negligence proximately caused the injury of another, the crime has been committed, even if there are other factors which also are proximate causes of the injury. *Unlike the civil context, in the criminal context it simply is not relevant that the victim was negligent unless the defendant's conduct did not substantially contribute to the cause of the injury.* (Footnotes omitted; emphasis supplied.) *Baysinger v. State*, 257 Ga. App. 273-274 (1) (570 SE2d 593) (2002).

*Corbett*, supra at 718 (1) (b).

In *Ponder v. State*, supra at 95 (1), Ponder fled when Sergeant Scott attempted to pull him over for driving at night without headlights. Scott pursued Ponder southbound and was seen by Officer Mixson, who was proceeding northbound and activated his lights and siren to assist. Ponder drove toward Mixson and forced him off the road. Scott then attempted to pass Ponder, but, when Ponder veered

toward him, Scott executed a "sudden-snatch-left" evasive maneuver to avoid colliding with him and was struck and killed by an oncoming car. We found the evidence sufficient for a rational finder of fact to find beyond a reasonable doubt that Ponder's actions played a substantial part in bringing about Scott's death and that the death was a reasonably probable consequence of these actions. See also *Guzman v. State*, 262 Ga. App. 564, 568 (1) (b) (586 SE2d 59) (2003).

There was no error in the trial court's denials of McGrath's motions for directed verdict and new trial on this ground.[4]

2. McGrath contends that the trial court erred in allowing his statement into evidence because it was the fruit of the poisonous tree, the allegedly invalid implied consent warning.

Prior to trial, a motion to suppress/in limine was filed by McGrath, making a constitutional challenge to OCGA § 40-5-55 (a) and seeking to suppress the results of his blood test. The motion was initially denied but, following the decision in *Cooper v. State*, 277 Ga. 282 (587 SE2d 605) (2003) (sole basis for taking blood was fact that a bone had been broken in the traffic accident), was granted on motion to reconsider and McGrath's blood test, which tested positive for methamphetamine, was not admitted at trial.

The trial court's order on the motion to reconsider, however, was entered prior to the decision in *Hough v. State*, 279 Ga. 711, 713-714 (1) (a) (620 SE2d 380) (2005). There, the Supreme Court found that

> *Cooper* makes it clear that OCGA § 40-5-55 (a) is unconstitutional to the extent that it could be interpreted to require an individual to submit to chemical testing *solely* because that individual was involved in a traffic accident resulting in serious injuries or fatalities. On the other hand, where an individual has been involved in a traffic accident resulting in serious injuries or fatalities *and* the investigating law enforcement officer has probable cause to believe that the individual was driving under the influence of alcohol or other drugs, the constitutional infirmities at play in *Cooper* are no longer present, and the ensuing search is both warranted and constitutional. Due to the existence of probable cause, the individual being subjected to a search is, in fact, a "suspect" as contemplated by the statute. . . . Furthermore, nothing in OCGA § 40-5-55 requires a DUI suspect to be

---

[4] McGrath's argument that *State v. Crane*, 247 Ga. 779 (279 SE2d 695) (1981) requires direct causation is not persuasive. That case involved the felony murder statute, which was subject to two interpretations. Such is not the case here since the vehicular homicide statute has been consistently interpreted and applied.

arrested in order to trigger his or her implied consent to testing following a traffic accident resulting in serious injuries or fatalities.

(Emphasis in original.) Id.; see also *Ellis v. State*, 275 Ga. App. 881 (622 SE2d 89) (2005).

McGrath was read the implied consent warning later that day at the hospital by Deputy Sheriff Spencer. Spencer, who had been the first law enforcement officer on the scene following the wrecks, had been asked by State Trooper Ansley at the scene to go to the hospital, read McGrath the warning, and obtain a blood sample. McGrath was not under formal arrest at the time the warning was read to him around 9:30 a.m. Sergeant Scott read McGrath his *Miranda* warnings and interviewed him at the hospital around 1:30 p.m. that same day.

Based on these later cases, it appears that the trial court was correct in initially denying McGrath's motion to suppress the blood test results, because of the existence of probable cause to believe he was driving under the influence. *Hough v. State*, supra; *Ellis v. State*, supra.

Therefore, there was no initial "poisonous tree" from which McGrath's statement evolved. Even assuming such an illegality in obtaining the blood, however, because different officers were involved in the testing and interviewing and the fact that four hours elapsed between the two, there was no exploitation of that illegality to obtain the statement. Compare *McKinney v. State*, 261 Ga. App. 218, 219 (2) (582 SE2d 463) (2003) with *Baker v. State*, 277 Ga. App. 520 (627 SE2d 145) (2006).

3. Finally, McGrath argues that the trial court erred in charging the jury, at the request of the State, on the "rescue doctrine."

"[I]t is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error." (Citation omitted.) *Hall v. State*, 273 Ga. App. 203, 206 (3) (614 SE2d 844) (2005).

The trial court fully charged the jury on the elements of vehicular homicide, reckless driving, driving under the influence, reasonable doubt, and the fact that the burden of proof never shifted to McGrath. Following the charges on causation and proximate cause, the trial court also charged:

The doctrine of rescue may be stated as follows: If you find that a Defendant's wrongful act of commission or omission has created a condition or situation which involves urgent and imminent peril and danger to life or property of himself or of others, others in the exercise of ordinary care for their

own safety under the circumstances short of rashness and recklessness, may attempt successfully or otherwise to rescue such endangered life or property by any means reasonably appropriate to the purpose and insofar as the *proximate cause* of any injuries that a rescuer sustains as a result of his or her efforts is concerned, the *chain of causation* may remain intact since it may be reasonably anticipated that once such peril to life or property is initiated and brought into being by the acts of a defendant, reasonable attempts will be undertaken to alleviate and nullify the consequences of such peril. Whether or not the rescue doctrine applies is an issue for you, the jury, to decide.

(Emphasis supplied.)

McGrath objected to this charge on the ground that the doctrine of rescue is not applicable in criminal cases because it is not part of the statutes governing criminal proceedings or the common law relating to criminal actions. No authority for this proposition was cited below or here.

As fully discussed in Division 1, the issue of proximate causation was vigorously contested by McGrath and he made an issue of the fact that Burroughs-Brown placed herself in peril. Although the rescue doctrine has, to date, been applied only in civil cases,[5] the specific concept addressed by the rescue doctrine is proximate causation. As noted in *Corbett,* supra at 718, in the criminal context, the victim's negligence is not relevant unless the defendant's conduct did not substantially contribute to the cause of the injury. The giving of the rescue doctrine as part of the trial court's thorough instructions on causation and proximate cause was, in our opinion, addressing this concept and was not error. It was for the jury to determine whether McGrath's actions substantially contributed to the situation which invited rescue by Burroughs-Brown.

There was no error in the giving of this charge.

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED MARCH 1, 2006 — ▮▮▮▮▮▮

*Thomas A. Camp,* for appellant.

---

[5] See, e.g., *Atlanta &c. R. Co. v. Leach,* 91 Ga. 419 (17 SE 619) (1893); *Stone's Independent Oil Distrib. v. Bailey,* 122 Ga. App. 294, 300 (1) (176 SE2d 613) (1970).

*Robert W. Lavender, District Attorney, David C. Walker, Assistant District Attorney*, for appellee.