## S03A1255. COOPER v. THE STATE.
(587 SE2d 605)

HINES, Justice.

Carey Don Cooper appeals his conviction for driving under the influence of cocaine.[1] He makes a constitutional challenge to the provision in OCGA § 40-5-55 (a), the implied consent statute, requiring chemical testing of the operator of a motor vehicle involved in a traffic accident resulting in serious injuries or fatalities. The statute reads in pertinent part:

> any person who operates a motor vehicle upon the highways or elsewhere throughout this state shall be deemed to have given consent, subject to Code Section 40-6-392, to a chemical test or tests of his or her blood, breath, urine, or other bodily substances for the purpose of determining the presence of alcohol or any other drug, if arrested for any offense arising out of acts alleged to have been committed in violation of Code Section 40-6-391 *or if such person is involved in any traffic accident resulting in serious injuries or fatalities.*[2]

---

*Barnes v. State*, 269 Ga. 345, 352 (496 SE2d 674) (1998).

[1] Cooper was found guilty of driving under the influence of cocaine and driving under the influence of benzoylecgonine, a metabolite of cocaine; the jury acquitted him of driving under the influence of hydrocodone. Cooper was given a misdemeanor sentence for driving under the influence of cocaine.

[2] OCGA § 40-5-55 in its entirety states:

(a) The State of Georgia considers that any person who drives or is in actual physical control of any moving vehicle in violation of any provision of Code Section 40-6-391 constitutes a direct and immediate threat to the welfare and safety of the general public. Therefore, any person who operates a motor vehicle upon the highways or elsewhere throughout this state shall be deemed to have given consent, subject to Code Section 40-6-392, to a chemical test or tests of his or her blood, breath, urine, or other bodily substances for the purpose of determining the presence of alcohol or any other drug, if arrested for any offense arising out of acts

(Emphasis supplied.)

We conclude that the statutory provision is unconstitutional as violative of Article I, Section I, Paragraph XIII of the 1983 Georgia Constitution and the Fourth and Fourteenth Amendments of the Constitution of the United States because it authorizes a search and seizure without probable cause.[3] Accordingly, Cooper's conviction cannot stand.

## I. Facts

On the evening of August 11, 2000, Cooper was involved in a two-vehicle collision with Johnny Ray Boles on Atlanta Highway in Barrow County. Cooper was heading eastbound when his pickup truck collided head on in the westbound lane with the westbound pickup truck driven by Boles. Emergency medical technicians came to the scene and transported Cooper and Boles to different hospitals before a Georgia State Patrol trooper arrived. The trooper investigated the scene and observed gouges in the road consistent with a head-on collision. The trooper went to the hospital where Boles had been taken and learned that Boles had sustained a broken arm. Because of the broken bone, the trooper collected a blood sample from Boles pursuant to OCGA § 40-5-55 (a), and then went to the hospital where Cooper had been taken in order to get a blood sample from him. The trooper read Cooper the implied consent notice for suspects

---

alleged to have been committed in violation of Code Section 40-6-391 or if such person is involved in any traffic accident resulting in serious injuries or fatalities. The test or tests shall be administered at the request of a law enforcement officer having reasonable grounds to believe that the person has been driving or was in actual physical control of a moving motor vehicle upon the highways or elsewhere throughout this state in violation of Code Section 40-6-391. The test or tests shall be administered as soon as possible to any person who operates a motor vehicle upon the highways or elsewhere throughout this state who is involved in any traffic accident resulting in serious injuries or fatalities. Subject to Code Section 40-6-392, the requesting law enforcement officer shall designate which of the test or tests shall be administered, provided a blood test with drug screen may be administered to any person operating a motor vehicle involved in a traffic accident resulting in serious injuries or fatalities.

(b) Any person who is dead, unconscious, or otherwise in a condition rendering such person incapable of refusal shall be deemed not to have withdrawn the consent provided by subsection (a) of this Code section, and the test or tests may be administered, subject to Code Section 40-6-392.

(c) As used in this Code section, the term "traffic accident resulting in serious injuries or fatalities" means any motor vehicle accident in which a person was killed or in which one or more persons suffered a fractured bone, severe burns, disfigurement, dismemberment, partial or total loss of sight or hearing, or loss of consciousness.

[3] The provision in subsection (a) allowing for chemical testing if the motor vehicle operator is arrested for any offense arising out of acts alleged to have been committed in violation of OCGA § 40-6-391 is not at issue in this appeal.

age 21 or over,[4] and Cooper agreed to submit to the blood test. Cooper was not under arrest, and the trooper's sole basis for administering the blood test to Cooper was because he believed that OCGA § 40-5-55 (a) mandated that he do so inasmuch as Cooper was involved in a traffic accident resulting in serious injuries. The Georgia State Crime Lab determined that Cooper's blood sample tested positive for cocaine, benzoylecgonine, and hydrocodone.

Prior to trial, Cooper moved to suppress the blood test results on the basis, inter alia, that to the extent that OCGA § 40-5-55 allowed the State to require a person to consent to a search of his or her bodily substances without probable cause, the statute was unconstitutional under the State and Federal Constitutions. The superior court denied the motion after finding that the statute did not violate the unreasonable search and seizure prohibitions of either the State or Federal Constitutions.[5]

## II. The Constitutional Attack and This Court's Role on Review

" 'In order to raise a question as to the constitutionality of a "law," at least three things must be shown: (1) The statute or the particular part or parts of the statute which the party would challenge must be stated or pointed out with fair precision; (2) the provision of the Constitution which it is claimed has been violated must be clearly designated; and (3) it must be shown wherein the statute, or some designated part of it, violates such constitutional provision.' " [*Wallin v. State*, 248 Ga. 29, 30 (1) (279 SE2d 687) (1981) (quoting *DeKalb County v. Post Properties*, 245 Ga. 214, 218 (263 SE2d 905) (1980).]

---

[4] The implied consent notice for suspects age 21 or over reads:

Georgia law requires you to submit to state administered chemical tests of your blood, breath, urine, or other bodily substances for the purpose of determining if you are under the influence of alcohol or drugs. If you refuse this testing, your Georgia driver's license or privilege to drive on the highways of this state will be suspended for a minimum period of one year. Your refusal to submit to the required testing may be offered into evidence against you at trial. If you submit to testing and the results indicate an alcohol concentration of 0.08 grams or more, your Georgia driver's license or privilege to drive on the highways of this state may be suspended for a minimum period of one year. After first submitting to the required state tests, you are entitled to additional chemical tests of your blood, breath, urine, or other bodily substances at your own expense and from qualified personnel of your own choosing. Will you submit to the state administered chemical tests of your (designate which tests) under the implied consent law?

[5] The superior court also upheld the constitutionality of OCGA §§ 40-5-67.1 and 40-6-392, but these statutes are not challenged in this appeal.

*Chester v. State*, 262 Ga. 85, 88 (3) (414 SE2d 477) (1992). Cooper has adequately raised his constitutional challenge.

When a statute is under constitutional attack, this Court must presume it to be constitutional until it is established that the statute " 'manifestly infringes upon a constitutional provision or violates the rights of the people. . . .' " *Love v. State*, 271 Ga. 398, 400 (2) (517 SE2d 53) (1999), quoting *Miller v. State*, 266 Ga. 850, 852 (2) (472 SE2d 74) (1996).

### III. Search and Seizure and Probable Cause

The United States and Georgia Constitutions both protect against unreasonable searches and seizures. U. S. Const. Amends. IV, XIV; Ga. Const. Art. I, Sec. I, Par. XIII; *King v. State*, 276 Ga. 126, 128 (577 SE2d 764) (2003). Under OCGA § 40-5-55 (a), because Cooper was involved in an accident resulting in "serious injuries," as defined in subsection (c) of the statute, he was deemed by operation of law to have given consent to the administered blood test to determine if there was the presence of alcohol or any other drug. *Stevenson v. State*, 264 Ga. 892, 893 (1) (453 SE2d 18) (1995). See also *Pilkenton v. State*, 254 Ga. App. 127 (1) (561 SE2d 462) (2002). "A suspect's Fourth Amendment right to be free of unreasonable searches and seizures applies to the compelled withdrawal of blood." *Welch v. State*, 254 Ga. 603, 607 (3) (331 SE2d 573) (1985), citing *Schmerber v. California*, 384 U. S. 757, 760-765 (86 SC 1826, 16 LE2d 908) (1966). So too is the extraction of blood a search within the meaning of the Georgia Constitution. *Strong v. State*, 231 Ga. 514 (202 SE2d 428) (1973).

In *Schmerber v. California*, supra, the petitioner was convicted of the criminal offense of driving an automobile while under the influence of intoxicating liquor. He was arrested at a hospital while receiving treatment for injuries suffered in an accident involving the automobile that he had apparently been driving. At the direction of a police officer, a blood sample was then withdrawn from him by a hospital physician. The chemical analysis of the blood sample showed a percent by weight of alcohol in his blood at the time of the offense indicating intoxication, and the report of this analysis was admitted in evidence at the trial. The petitioner objected to receipt of this evidence on the ground, inter alia, that it violated his right not to be subjected to unreasonable searches and seizures in contravention of the Fourth Amendment.

After stating that "[t]he overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State," the United States Supreme Court framed the issues before it as whether the police were justified

in requiring Schmerber to submit to the blood test, and whether the means and procedures employed in taking Schmerber's blood respected relevant Fourth Amendment standards of reasonableness. *Schmerber v. California* at 767-768. The Court found that there was plainly probable cause for the officer to arrest Schmerber and charge him with driving an automobile while under the influence of intoxicating liquor, and that the attempt to secure evidence of blood-alcohol content in that case was an appropriate incident to Schmerber's arrest. Id. at 768, 771. Consequently, the Court concluded that there was no showing of a violation of Schmerber's right under the Fourth and Fourteenth Amendments to be free of unreasonable searches and seizures. Id. at 772. But the Court cautioned,

> It bears repeating, however, that we reach this judgment only on the facts of the present record. The integrity of an individual's person is a cherished value of our society. That we today hold that the Constitution does not forbid the States minor intrusions into an individual's body under stringently limited conditions in no way indicates that it permits more substantial intrusions, or intrusions under other conditions.

Id. at 772.

It is plain that,

> the Fourth Amendment does not proscribe all searches and seizures, but only those that are unreasonable. *United States v. Sharpe*, 470 U. S. 675, 682 [(105 SC 1568, 1573, 84 LE2d 605)] (1985); *Schmerber v. California*, 384 U. S., at 768. What is reasonable, of course, "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *United States v. Montoya de Hernandez*, 473 U. S. 531, 537 [(105 SC 3304, 3308, 87 LE2d 381)] (1985). Thus, the permissibility of a particular practice "is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Delaware v. Prouse*, 440 U. S. [648, 654 (99 SC 1391, 59 LE2d 660) (1979)]; *United States v. Martinez-Fuerte*, 428 U. S. 543 [(96 SC 3074, 49 LE2d 1116)] (1976). In most criminal cases, we strike this balance in favor of the procedures described by the Warrant Clause of the Fourth Amendment. See *United States v. Place*, [462 U. S. 696, 701, and n. 2 (103 SC 2637, 77 LE2d 110) (1983)]; *United States v. United States District Court*, 407 U. S. 297, 315 [(92 SC 2125, 2135-2136, 32 LE2d 752)]

(1972). Except in certain well-defined circumstances, a search or seizure in such a case is not reasonable unless it is accomplished pursuant to a judicial warrant issued upon probable cause. See, e.g., *Payton v. New York*, 445 U. S. 573, 586 [(100 SC 1371, 1380, 63 LE2d 639)] (1980); *Mincey v. Arizona*, 437 U. S. 385, 390 [(98 SC 2408, 2412, 57 LE2d 290)] (1978).

*Skinner v. Railway Labor Executives' Assn.*, 489 U. S. 602, 619 (109 SC 1402, 103 LE2d 639) (1989). Indeed, this Court stated in *Adams v. State*, 269 Ga. 405, 407 (1) (498 SE2d 268) (1998), that in the criminal context, the reasonableness of a search under the Fourth Amendment is measured with a " 'probable cause' yardstick."

The reasonableness of a search under the Georgia Constitution cannot be measured under a lesser standard. As this Court has readily acknowledged, federal constitutional standards represent the minimum protections that must be given to the citizens of Georgia. *Dawson v. State*, 274 Ga. 327, 328 (1) (554 SE2d 137) (2001); *Mosher v. State*, 268 Ga. 555, 559, n. 3 (491 SE2d 348) (1997).

The high courts of several other states have grappled with the constitutionality of provisions allowing the chemical testing of bodily substances without probable cause or valid consent, and based solely on a serious traffic mishap. These courts have uniformly rejected provisions which obviate the finding of probable cause. See *McDuff v. State*, 763 S2d 850 (Miss. 2000); *Blank v. State*, 3 P3d 359 (Alaska 2000); *King v. Ryan*, 607 NE2d 154 (Ill. 1992); *Commonwealth v. Kohl*, 615 A2d 308 (Pa. 1992).[6] Compare *State v. Roche*, 681 A2d 472

---

[6] In *McDuff v. State*, the Supreme Court of Mississippi was asked to determine the constitutionality of a state statute which provided that "any driver involved in an automobile accident from which a fatality occurs shall have his blood drawn and tested for the presence of alcohol or drugs, regardless of whether probable cause exits to believe that the driver was under the influence of alcohol or drugs." Id. at 852. The Court determined that the statute was null and void under both the Fourth Amendment and the Mississippi Constitution because it mandated search and seizure absent probable cause or consent. Id. at 853.

In *Blank v. State*, the Court of Appeals of Alaska considered a state statute which allowed a police officer to administer chemical tests of bodily substances "if the person is involved in a motor vehicle accident that causes death or serious physical injury to another person," "without any individualized suspicion that the driver was impaired, whether by alcohol or drugs, or even any evidence that the driver or operator caused the accident." Id. at 366. The Court concluded that the statute permitted unreasonable intrusions contrary to both the Fourth Amendment and the Alaska Constitution. Id. at 368.

The Supreme Court of Illinois in *King v. Ryan,* examined the constitutionality of a state statute which implied consent for chemical testing of bodily substances if there was probable cause to believe that the person " 'was the driver at fault, in whole or in part, for a motor vehicle accident which resulted in the death or personal injury of any person.' " Id. at 157-158. The Court recognized that the probable

(Maine 1996).[7]

## IV. "Special Needs" Exception

In *Skinner v. Railway Labor Executives' Assn.*, supra, the United States Supreme Court considered and upheld regulations promulgated by the Federal Railroad Administration (FRA) that required railroads to insure that blood and urine tests of covered employees were conducted following certain major train accidents or incidents and authorized the railroads to administer breath and urine tests to employees who violated certain safety rules. Id. at 606. The question was whether such regulations violated the Fourth Amendment. Id. The Court determined that the Fourth Amendment was applicable to the drug and alcohol testing prescribed by the FRA regulations, and reaffirmed that in general a search or seizure in a criminal case is not reasonable unless it is accomplished under the authority of a judicial warrant issued upon probable cause. Id. at 619. The Court stated:

> We have recognized exceptions to this rule, however, "when 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.' " [Cit.] When faced with such special needs, we have not hesitated to balance the governmental and privacy interests to assess the practicality of the warrant and probable-cause requirements in the particular context. [Cits.]

Id. at 620.

---

cause element of the statute related only to the driver's fault for the accident and did not require any grounds to suspect that the driver was under the influence of drugs or alcohol. Id. at 158. Consequently, the Court determined that the statute violated both the Fourth Amendment and the Illinois Constitution.

*Commonwealth v. Kohl* involved a challenge to the Pennsylvania implied consent statute. The statute authorized chemical testing if the police officer had reasonable grounds to believe the person to have been driving, operating, or in actual physical control of the movement of the motor vehicle, which was "involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed." Id. at 313. The Supreme Court of Pennsylvania concluded that the statute authorized unreasonable searches and seizures in violation of the Fourth Amendment and the Pennsylvania Constitution.

[7] The Supreme Judicial Court of Maine upheld the constitutionality of a state statute allowing for chemical testing in any accident in which a death has occurred or will occur because the statute contained a constitutional safeguard that allowed the test results to be admissible at trial only if the court was satisfied that probable cause existed, independent of the test results, to believe that the operator of the vehicle was under the influence of intoxication of liquor or drugs or had an excessive blood alcohol level.

The Court concluded:

> The Government's interest in regulating the conduct of rail-road employees to ensure safety, like its supervision of probationers or regulated industries, or its operation of a government office, school, or prison, "likewise presents 'special needs' *beyond normal law enforcement* that may justify departures from the usual warrant and probable-cause requirements."

(Emphasis supplied.) Id. Thus, a chief purpose of the tests in *Skinner* was to prevent railroad accidents rather than to aid in the criminal prosecution of those tested. *King v. Ryan,* supra at 159.

This Court too has recognized and applied a "special needs" exception to the probable cause and warrant requirements of the Fourth Amendment. In *Adams v. State*, supra, this Court was faced with a challenge to the facial validity of OCGA § 17-10-15 (b), which permits the victim of a crime involving significant exposure to Human Immunodeficiency Virus (HIV) to request that the person arrested for the crime submit to an HIV blood test. The appellant asserted that the statute violated the Fourth Amendment. The Court found that the government's interest in adopting laws designed to stem the Acquired Immunodeficiency Syndrome (AIDS) epidemic was compelling, that the intrusion occasioned by the search was minimal, and that balancing the government's need to search against the intrusion occasioned by the search, the government's interest outweighed that of the individual. Consequently, the Court concluded that the search was reasonable. However, in so doing, this Court stressed that:

> The testing procedure prescribed by OCGA § 17-10-15 (b) is civil, not criminal, in nature. Its manifest purpose is to control the spread of AIDS. Toward that end, the statute provides that the victim of a crime in which there is probable cause to believe that there was significant exposure to HIV can learn whether the person arrested for that crime is carrying the virus. The results cannot be used against the defendant in any criminal proceeding arising out of the alleged offense. OCGA § 17-10-15 (h). Moreover, the test results are disclosed only to the victim, public health authorities, the court which ordered the test, and the penal institution in which the defendant is confined. OCGA § 17-10-15 (f).

Id. at 408 (1).

The situation with regard to OCGA § 40-5-55 (a) is very differ-

ent. While the State's interest in guarding the welfare and safety of its citizens from the perils caused by intoxicated drivers is beyond dispute, it is clear that a primary purpose of OCGA § 40-5-55 is to gather evidence for criminal prosecution. No matter how important that purpose may be, it does not create a special need to depart from the Fourth Amendment's requirement of probable cause; otherwise it could be argued that the State's interest in securing evidence in any situation of potentially serious criminal conduct would justify dispensing with any finding of probable cause. The statute does not satisfy a need beyond that of normal law enforcement.[8] *Skinner v. Railway Labor Executives Assn.*, 489 U. S. at 620. Consequently, *Skinner* does not authorize a "special needs" exception in this case.

## V. Implied Consent

This Court has made plain that the Georgia Constitution does not protect citizens from compelled blood or breath testing or from the use of the results of the compelled testing at trial. *Klink v. State*, 272 Ga. 605, 606 (1) (533 SE2d 92) (2000). See also *Strong v. State*, 231 Ga. 514 (202 SE2d 428) (1973). In fact, this Court has held that "[o]ur 'Implied Consent Statute' (OCGA § 40-5-55) thus grants a *suspect* an opportunity, not afforded him by our constitution, to refuse to take a blood-alcohol test." (Emphasis supplied.) *Allen v. State*, 254 Ga. 433, 434 (1) (a) (330 SE2d 588) (1985). This Court's use of the term "suspect" in regard to the Implied Consent Statute brings into sharp focus the flaw in that portion of the statute compelling chemical testing of the person merely by virtue of involvement in a traffic accident resulting in serious injury or fatality. There is no requirement of individualized suspicion, much less probable cause, that would render the person "suspect" of impaired driving.

As the Court of Appeals of Indiana recently observed:

[I]t is clear that the legislature can condition the privilege of driving upon submitting to a chemical test if a driver is involved in an accident resulting in serious bodily injury or death, and the State can suspend that privilege if the driver does not submit. The legislature cannot, however, abrogate a person's Fourth Amendment right to be free from unreasonable searches and seizures, as defined by the Supreme Court. *See, e.g., Ybarra v. Illinois*, 444 U. S. 85, 96 [(100 SC

---

[8] Other states have rejected application of the "special needs" exception when considering the constitutionality of similar statutes. See *McDuff v. State*, supra; *Blank v. State*, supra; *King v. Ryan*, supra; *Commonwealth v. Kohl*, supra. But see *Fink v. Ryan*, 673 NE2d 281 (Ill. 1996), which found that the section of the Illinois Vehicle Code at issue fell within the "special needs" exception.

338, 345 n. 11, 62 LE2d 238)] (1979) (invalidating state statute authorizing searches without probable cause or warrant and noting that Supreme Court will not hesitate to hold such statutes unconstitutional). To hold that the legislature could nonetheless pass laws stating that a person "impliedly" consents to searches under certain circumstances where a search would otherwise be unlawful would be to condone an unconstitutional bypassing of the Fourth Amendment.

*Hannoy v. State*, 789 NE2d 977, 987 (Ind. 2003).

Thus, to the extent that OCGA § 40-5-55 (a) requires chemical testing of the operator of a motor vehicle involved in a traffic accident resulting in serious injuries or fatalities regardless of any determination of probable cause, it authorizes unreasonable searches and seizures in violation of the State and Federal Constitutions.

## VI. Actual Consent In This Case

It is well settled that a valid consent to a search eliminates the need for either probable cause or a search warrant. *Schneckloth v. Bustamonte*, 412 U. S. 218, 219 (93 SC 2041, 36 LE2d 854) (1973); *Meschino v. State*, 259 Ga. 611, 616 (4) (385 SE2d 281) (1989). In this case, Cooper submitted to the blood test after the trooper read him the implied consent notice for suspects age 21 or over. See OCGA § 40-5-67.1 (b) (2). Thus, the remaining question is the validity of Cooper's consent.

"When relying on the consent exception to the warrant requirement, the State has the burden of proving that the accused acted freely and voluntarily under the totality of the circumstances. *Raulerson v. State*, 268 Ga. 623, 625 (2) (a) (491 SE2d 791) (1997)." *State v. Tye*, 276 Ga. 559, 560 (1) (580 SE2d 528) (2003). See also *Bumper v. North Carolina*, 391 U. S. 543 (88 SC 1788, 20 LE2d 797) (1968).

Cooper only agreed to be tested after the trooper read him the age-applicable implied consent notice.[9] See OCGA § 40-5-67.1 (b) (2). This notice informed Cooper that Georgia law required him to submit to the chemical testing, that his refusal of the testing would lead to the suspension of his driving privileges, and that his refusal might be offered into evidence against him at trial.

This Court has determined that our implied consent statute grants a suspect an opportunity not afforded him by our Constitution

---

[9] There is no evidence that Cooper would have consented independent of the implied consent notice.

to refuse to take a blood-alcohol test, that is, it grants rather than denies a right to a defendant. *Allen v. State*, supra at 434 (1) (a). See also *Klink v. State*, supra at 606 (1). However, this Court made this determination in the situation in which the driver had already been arrested and charged with violating OCGA § 40-6-391, so the State had the probable cause necessary to gain consent. In the present case, Cooper was not suspected of violating OCGA § 40-6-391 at the time the trooper advised him of the implied consent law. Because the trooper did not find probable cause that Cooper was driving in violation of OCGA § 40-6-391, Cooper was offered two choices, neither of which the trooper was legally authorized to offer. Consequently, the trooper completely misled Cooper, albeit unintentionally, about his implied consent rights, and any consent based upon the misrepresentation is invalid. *Pilkenton v. State*, supra at 127 (1); see also *Commonwealth v. Kohl*, supra at 311, n. 1. The results of the blood test procured pursuant to the implied consent statute must be excluded.

## VII. Conclusion

"The requirements of the Fourth Amendment cannot be lowered based upon the heinousness of the particular crime police are investigating." *Hannoy v. State*, supra at 988. The illegally-obtained test results were not admissible against Cooper at trial, and the trial court erred in denying Cooper's motion to suppress such evidence. Consequently, Cooper must be given a new trial.

*Judgment reversed and case remanded. All the Justices concur.*

DECIDED OCTOBER 6, 2003 —
RECONSIDERATION DENIED NOVEMBER 7, 2003.

*William D. Healan III, Chestney-Hawkins Law Firm, Sherry Boston*, for appellant.

*Timothy G. Madison, District Attorney, Anthony B. Williams, Assistant District Attorney, Thurbert E. Baker, Attorney General, Christopher S. Brasher, Assistant Attorney General*, for appellee.