## A05A1902. ELLIS v. THE STATE.
### (622 SE2d 89)

BLACKBURN, Presiding Judge.

Following a bench trial, Courtney Sentell Ellis appeals his conviction on two counts of homicide by vehicle and two counts of serious injury by vehicle. Ellis contends that the trial court erred by: (1) admitting into evidence the results of the State-administered chemical test; (2) admitting certain hearsay testimony from an emergency medical technician ("EMT") called to the scene of the incident; and (3) allowing the State to obtain Ellis's medical records pursuant to a search warrant. We conclude that Ellis's enumerations are without merit and affirm.

This Court reviews evidence in a light most favorable to the verdict, with deference to the factfinder's assessment of the evidence. *Escutia v. State.*[1] So viewed, the evidence demonstrates that while driving a truck, Ellis veered into the oncoming lane, causing the driver of an oncoming vehicle to pull onto the right shoulder of the road to avoid a collision. Not decelerating, Ellis veered even further and struck the other vehicle, severely injuring one of the vehicle's occupants and killing another.

To assess Ellis's medical condition, a responding EMT asked him where he was hurt and whether he was taking any medications. Ellis responded that "the night before that he had smoked marijuana and drank alcohol all night." After treating Ellis, the EMT reported Ellis's statements to a police officer on the scene. The officer noted that Ellis's eyes were bloodshot, watery, and hazy, with the pupils dilated. Based on these observations, the officer testified that he believed Ellis may have been under the influence of alcohol or drugs.

Ellis was transported to a hospital where the emergency room physician asked him about his medical history, including substance use, so as to know what types of medication to administer. Ellis responded that he had smoked marijuana as recently as the night before the collision, which response the physician noted in Ellis's medical records. The State later obtained these records pursuant to a search warrant.

---

[1] *Escutia v. State*, 277 Ga. 400, 402 (2) (589 SE2d 66) (2003).

Based on the authorities' belief that Ellis was driving while impaired, another police officer met with Ellis at the hospital to collect blood and urine samples for alcohol and drug testing. After determining that Ellis was under the age of 21, the officer, without arresting him, read Ellis the Georgia implied consent warning for suspects under age 21. See OCGA § 40-5-55. Ellis consented to have samples of his blood and urine taken for testing. Both samples tested positive for marijuana metabolites. Months after the accident, Ellis was arrested and charged with two counts of homicide by vehicle and two counts of serious injury by vehicle.

Prior to trial, Ellis filed a motion to suppress the results of the State-administered chemical test. The trial court denied the motion, finding that there was "probable cause, warranting reading to defendant an Implied Consent Warning and the subsequent request that defendant provide blood and urine samples." Based on this ruling, Ellis waived his right to a jury trial. At the conclusion of the bench trial, the court convicted Ellis on all counts.

1. Ellis contends that the trial court erroneously denied his motion to suppress the results of the State-administered chemical test. We disagree and affirm.

OCGA § 40-5-55 (a) provides that a person who drives a vehicle in Georgia is deemed to have given consent to a State-administered chemical test of his blood or urine for the purpose of determining the presence of alcohol or any other drug, if (1) he is arrested for any offense arising out of acts alleged to have been committed in violation of OCGA § 40-6-391 or if (2) he is involved in any traffic accident resulting in serious injuries or fatalities. In *Cooper v. State*,[2] the Supreme Court of Georgia held that OCGA § 40-5-55 (a) is unconstitutional to the extent it requires an individual to submit to chemical testing solely based on his involvement in a traffic accident resulting in serious injuries or fatalities with no probable cause determination. More recently, in *Hough v. State*,[3] the Supreme Court of Georgia held that where an individual has been involved in a traffic accident resulting in serious injuries or fatalities *and* there is probable cause to believe that the individual was driving under the influence of alcohol or other drugs, the constitutional infirmities at play in *Cooper* are no longer present, and the ensuing chemical testing is both warranted and constitutional. *Hough* further held that "nothing in OCGA § 40-5-55 requires a DUI suspect to be arrested in order to trigger his or her implied consent to testing following a traffic accident resulting in serious injuries or fatalities." Id. at 714.

[2] *Cooper v. State*, 277 Ga. 282, 291 (V) (587 SE2d 605) (2003).
[3] *Hough v. State*, 279 Ga. 711 (620 SE2d 380) (2005).

In this case, Ellis contends that the trial court erred in denying his motion to suppress the results of the State-administered chemical test because the implied consent notice was administered solely based on Ellis's involvement in a fatal accident. The trial court, however, ruled that police sought chemical testing based on probable cause that Ellis was impaired, in violation of OCGA § 40-6-391, as well as on the serious injuries resulting from the accident. Although Ellis was not under arrest at the time the implied consent notice was read to him, given the serious injuries resulting from the accident and the fact that there was probable cause to believe Ellis was driving while impaired, Ellis's consent to testing was implied pursuant to OCGA § 40-5-55 and the test results were properly admitted. See *Hough*, supra. Accordingly, the trial court correctly denied Ellis's motion to suppress.

2. In his second enumeration of error, Ellis contends that the trial court erred by allowing the hearsay testimony of an EMT who testified that Ellis admitted smoking marijuana and drinking alcohol the night before the collision. This enumeration is without merit.

The EMT offering the challenged testimony was one of the first emergency personnel at the scene of the collision to provide Ellis with medical treatment. He testified that in providing treatment, he asked Ellis questions regarding his medical history, including whether he was taking any medications the EMT needed to know about. He further testified that in response to these questions Ellis admitted that, "the night before that he had smoked marijuana and drank alcohol all night."

Pursuant to OCGA § 24-3-4, statements made for the purpose of describing medical history insofar as reasonably pertinent to diagnosis or treatment are admissible in evidence.[4] The EMT's questions to Ellis were pertinent to provide medical treatment. Thus, his testimony regarding Ellis's admitted drug use the night before the collision was admissible. See *Miller v. State*;[5] *Sparks v. State*.[6]

3. In his third enumeration of error, Ellis contends that the trial court erred in allowing the State to obtain his medical records pursuant to a search warrant. Ellis further contends that this error allowed the State to discover his admission of marijuana use to the trauma physician who treated him. This enumeration is without merit.

---

[4] OCGA § 24-3-4 provides: "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment shall be admissible in evidence."

[5] *Miller v. State*, 194 Ga. App. 533, 534 (2) (a) (390 SE2d 901) (1990).

[6] *Sparks v. State*, 172 Ga. App. 891, 892 (2) (324 SE2d 824) (1984).

While receiving treatment from a trauma physician at the hospital, Ellis again admitted to marijuana use the night before the collision. The physician noted this admission in Ellis's medical records, which the State later obtained pursuant to a search warrant. Based on the information contained in the records, the State had the physician testify at trial regarding Ellis's admission.

*King v. State*[7] directly addressed the constitutionality of obtaining medical records pursuant to a search warrant. Finding that existing search warrant procedures provide adequate protections for a defendant's privacy rights under both the Georgia and United States Constitutions, *King* held that the State does not violate a defendant's right to privacy or due process in obtaining a search warrant for medical records without notice or a hearing. *King*, supra at 129 (2).

Ellis relies upon the similarly named case of *King v. State*,[8] which held that it was unconstitutional for the State to obtain medical records using a subpoena. However, because the State in this matter obtained Ellis's medical records through a search warrant and not a subpoena, Ellis's reliance on this authority is misplaced. Accordingly, Ellis's third enumeration of error is without merit. We affirm the conviction.

*Judgment affirmed. Miller and Bernes, JJ., concur.*

DECIDED OCTOBER 17, 2005 — 

*Benjamin A. Davis, Jr.*, for appellant.
*Daniel J. Porter, District Attorney, Matthew D. Crosby, Assistant District Attorney*, for appellee.

---

[7] *King v. State*, 276 Ga. 126 (577 SE2d 764) (2003).
[8] *King v. State*, 272 Ga. 788, 794 (1) (535 SE2d 492) (2000).