## A06A1003. JENKINS v. THE STATE.
### (637 SE2d 818)

BARNES, Judge.

This court granted Catherine Jenkins' application for interlocutory appeal from the denial of her motion to suppress blood alcohol test results. In her sole enumeration of error, Jenkins contends the trial court erred in denying her motion because no evidence of record shows that she was involved in an accident resulting in serious injuries under OCGA § 40-5-55, and she was not placed under arrest before the reading of her implied consent rights. Upon review, we affirm the trial court's denial of Jenkins' motion to suppress.

> In reviewing denial of a motion to suppress or in limine, we apply the following three principles[.] First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citations, punctuation and emphasis omitted.) *Brittian v. State,* 257 Ga. App. 729-730 (572 SE2d 76) (2002).

The record reveals that at approximately 7:55 a.m. on October 22, 2004, Officer A. Lahumbarr of the Henry County Police Department was dispatched to an "accident with injuries," and arrived at the scene of a two-vehicle accident. Based on his observations, Officer Lahumbarr determined that the driver of a Tahoe, later identified as Jenkins, had failed to yield before entering the highway which caused her to collide with a pickup truck. Jenkins was on a gurney in the back of an ambulance when the officer arrived; the victim was sitting near his truck being treated by emergency personnel, and was unable to talk with the officer. According to the officer's observations, the victim "appeared to be injured," and it was later discovered that he had a

fracture of his kneecap.[1] Officer Lahumbarr spoke with Jenkins and noticed the odor of alcohol on her person, and that her eyes were watery and glossy. She told the officer that the accident occurred because she had not noticed the truck before she pulled out into the highway. She responded affirmatively when asked if she had been drinking, and answered that she had consumed about 19 beers the previous night.

Officer Christy Nebel responded to the accident as well, and by talking with witnesses and observing the position of the vehicles also determined that Jenkins was at fault. She detected the odor of alcohol from inside Jenkins' car which was located in a ditch. Officer Nebel followed Jenkins to the hospital and talked with her after first ascertaining that she was not under the influence of pain medications. The officer noted that Jenkins was on a stretcher with her neck immobilized and appeared "[un]able to move." Officer Nebel was in full uniform and identified herself before informing Jenkins that she was investigating the accident. She told Jenkins that there was reason to believe that alcohol was involved in the accident. She observed that Jenkins' eyes were glossy, and that upon entering Jenkins' hospital room the smell of alcohol was evident, and became more pronounced "as you got closer to Ms. Jenkins."

Officer Nebel had Officer Robert Hohenstein meet her at the hospital with a blood test kit. Officer Hohenstein read Jenkins her implied consent rights and further informed Jenkins of her *Miranda* rights. After Jenkins consented Officer Nebel questioned her about the previous night, and after her blood was drawn, advised Jenkins that "she was going to be charged with DUI, less safe, and some other traffic offenses and that the only reason why she wasn't going to jail this day for the DUI was because she was receiving treatment for any injuries that were sustained in the accident." Officer Lahumbarr then issued Jenkins citations for failing to yield upon entering a roadway, DUI as a less safe driver, and for failing to have her Florida driver's license changed to a Georgia driver's license after 30 days. Officer Nebel informed Jenkins that she would be released on a copy of the citations. Jenkins was formally indicted in January 2005 for serious injury by vehicle, and two counts of DUI, and later arrested.

Jenkins argues that because she was not involved in a serious accident pursuant to OCGA § 40-5-55, the officers were required to place her under arrest before the reading of her consent right. She maintains that there was never any indication that she was under

---

[1] This injury was the basis for the charge in the indictment of Serious Injury by Vehicle in that Jenkins had "unlawfully without malice, caused bodily harm to [the victim] by rendering a member of his body, to wit, his leg, useless through a violation of OCGA § 40-6-391."

arrest, and that even if the citations are sufficient to be considered an arrest, the officer did not write them until approximately 12 minutes after the implied consent was read. We do not agree.

OCGA § 40-5-55, commonly referred to as Georgia's implied consent statute, provides in subsection (a) that

> any person who operates a motor vehicle upon the highways or elsewhere throughout this state shall be deemed to have given consent, subject to Code Section 40-6-392, to a chemical test or tests of his or her blood, breath, urine, or other bodily substances for the purpose of determining the presence of alcohol or any other drug, if arrested for any offense arising out of acts alleged to have been committed in violation of Code Section 40-6-391 or if such person is involved in any traffic accident resulting in serious injuries or fatalities.

In *Cooper v. State*, 277 Ga. 282 (587 SE2d 605) (2003), our Supreme Court rejected the idea that the statute could be interpreted to require an individual to submit to chemical testing *exclusively* based on involvement in a traffic accident resulting in serious injuries or fatalities. It concluded that

> to the extent that OCGA § 40-5-55 (a) requires chemical testing of the operator of a motor vehicle involved in a traffic accident resulting in serious injuries or fatalities *regardless of any determination of probable cause*, it authorizes unreasonable searches and seizures in violation of the State and Federal Constitutions.

(Emphasis supplied.) Id. at 291 (V).

However, in *Hough v. State*, 279 Ga. 711 (620 SE2d 380) (2005), the Supreme Court held that "nothing in OCGA § 40-5-55 requires a DUI suspect to be arrested in order to trigger his or her implied consent to testing following a traffic accident resulting in serious injuries or fatalities." Id. at 714 (1) (a).

> *Cooper* makes it clear that OCGA § 40-5-55 (a) is unconstitutional to the extent that it could be interpreted to require an individual to submit to chemical testing *solely* because that individual was involved in a traffic accident resulting in serious injuries or fatalities. On the other hand, where an individual has been involved in a traffic accident resulting in serious injuries or fatalities *and* the investigating law enforcement officer has probable cause to believe that the individual was driving under the influence of alcohol or other drugs, the constitutional infirmities at play in *Cooper*

are no longer present, and the ensuing search is both warranted and constitutional. Due to the existence of probable cause, the individual being subjected to a search is, in fact, a "suspect" as contemplated by the statute.

Id. at 713 (1) (a). Moreover, "an individual involved in such an accident, rather than someone who is merely stopped while driving, is on notice that some inquiry will be made regarding the cause of and responsibility for the accident, and this knowledge would give context to the subsequent reading of implied consent rights." Id. at 714 (1) (a). OCGA § 40-5-55 (c) provides that

the term "traffic accident resulting in serious injuries or fatalities" means any motor vehicle accident in which a person was killed or in which one or more persons suffered a fractured bone, severe burns, disfigurement, dismemberment, partial or total loss of sight or hearing, or loss of consciousness.

Here, the victim was "seriously injured" as defined by OCGA § 40-5-55 (c), and the officers had probable cause based on Jenkins' statements, her glossy eyes, and the odor of alcohol on her person to believe that she was driving under the influence of alcohol. Accordingly, based on the serious injury and the presence of probable cause, the officer was not required to arrest Jenkins before the reading of implied consent, and her consent to the blood test was valid. Thus, we find that the trial court did not err in denying Jenkins' motion to suppress.

*Judgment affirmed. Andrews, P. J., and Bernes, J., concur.*

DECIDED OCTOBER 25, 2006.

*George C. Creal, Jr.*, for appellant.
*Tommy K. Floyd*, District Attorney, *Alicia C. Gant*, Assistant District Attorney, for appellee.