## S07G1093. SNYDER v. THE STATE.
(657 SE2d 834)

BENHAM, Justice.

At issue in this case is the construction of a portion of OCGA § 40-5-55, Georgia's implied consent law. In pertinent part, OCGA § 40-5-55 provides that any person who operates a motor vehicle in Georgia shall be deemed to have given consent to a chemical test of the driver's bodily substances to determine the presence of alcohol or other drug if the driver is arrested for driving under the influence of alcohol or drugs or if the driver is involved in a traffic accident resulting in serious injury or death.[1] Because it is conceded that appellant Harley Andrew Snyder was never arrested for driving under the influence, the focus of this case is on the second instance where consent for chemical testing is deemed to have been given — "if such person is involved in any traffic accident resulting in serious injuries or fatalities."[2]

Appellant Snyder was involved in a collision while driving a motor vehicle. The investigating law enforcement officer detected an

---

[1] However, for a driver who is not dead, unconscious or otherwise incapable of refusal, the implied consent is not effective until the driver consents to chemical testing after being informed of the statutory right to refuse to submit to the testing and the consequences of the refusal, i.e., the suspension of driving privileges and that the decision to refuse may be offered into evidence against the driver at trial. OCGA §§ 40-5-55 (b); 40-5-67.1 (b). In addition, law enforcement personnel must have probable cause to believe the person asked to submit to testing was driving under the influence of alcohol, drugs, or other intoxicating substance. *Cooper v. State*, 277 Ga. 282 (587 SE2d 605) (2003).

[2] OCGA § 40-5-55 (c) defines the phrase "traffic accident resulting in serious injuries or fatalities" as meaning "any motor vehicle accident in which a person was killed or which one or more persons suffered a fractured bone, severe burns, disfigurement, dismemberment, partial or total loss of sight or hearing, or loss of consciousness."

odor of alcohol on appellant as well as in appellant's vehicle, performed an alco-sensor test on appellant's breath which registered positive for the presence of ethyl alcohol, and concluded, after investigation, that appellant caused the collision by failing to obey a stop sign. Though Snyder had no visible injuries and his passenger suffered only facial lacerations, was alert and conversing with passersby and emergency medical personnel, both men were transported to a local hospital for treatment. At the investigating officer's request, a law enforcement officer at the hospital read the implied consent warning to appellant and received appellant's consent to draw blood for chemical testing. Appellant was not under arrest at the time. Ten days after the accident, appellant's passenger died.

The question is whether the State's use of test results on bodily substances that are requested and collected for testing after the traffic accident but before a person dies as a result of the accident is authorized.[3] The trial court denied appellant's motion to suppress, concluding that the statute allowed testing since there existed probable cause to believe Snyder was driving under the influence, Snyder was involved in an accident that resulted in a fatality, and it was immaterial that the test on Snyder's bodily substances took place before the victim died.[4] The Court of Appeals granted Snyder's application for interlocutory review and affirmed the trial court. The appellate court determined the language of the statute was plain and susceptible of only one natural and reasonable construction, concluding "there is no requirement that the serious injury or fatality occur prior to [the driver being read] the implied consent warnings, only that an individual is deemed to have given consent 'when' or 'if' this circumstance exists." *Snyder v. State*, 284 Ga. App. 350, 352 (643 SE2d 861 (2007). We granted appellant's petition for a writ of certiorari to the Court of Appeals.

1. Appellant first posits that a driver must be placed under arrest before a request may be made for the driver's bodily substances for chemical testing. We decided this assertion adversely to appellant in *Hough v. State*, 279 Ga. 711, 714 (620 SE2d 380) (2005), where we held that "nothing in OCGA § 40-5-55 requires a DUI suspect to be arrested in order to trigger his or her implied consent to testing following a traffic accident resulting in serious injuries or fatalities."

---

[3] While the indictment in the appellate record contains a count charging appellant with serious injury by vehicle (OCGA § 40-6-394) by causing bodily harm to a third person by rendering useless a member of his body, i.e., a wrist and two ribs, there was no effort at the suppression hearing to present this injury as a serious injury under OCGA § 40-5-55 (a).

[4] There was no evidence presented at the suppression hearing establishing a causal link between the traffic accident and the death of the deceased passenger, with the trial court and prosecutor agreeing it was a different issue than the issue of suppression.

The State may request a driver who has not yet been arrested to submit to a chemical test of the driver's bodily substances if a law enforcement officer has probable cause to believe the driver was driving under the influence and the driver was involved in a traffic accident resulting in serious injury or fatality. Id. at 714-715. In the case at bar, the trial court made a finding of probable cause. Thus, appellant need not have been arrested before being asked to submit to chemical testing so long as he had been involved in a traffic accident resulting in serious injury or fatality. See Division 3, infra.

2. Appellant next maintains that the serious injury or fatality required to have resulted from the traffic accident must be suffered by the driver whose bodily substances are sought for chemical testing. However, OCGA § 40-5-55 (a) contains no such words of limitation; rather, the statute's lack of limitation in this regard authorizes the chemical testing of the bodily substances of a driver involved in a traffic accident in which the driver suffers a serious injury (*State v. Umbach*, 284 Ga. App. 240 (643 SE2d 758) (2007)); the driver's passenger dies or suffers a serious injury (*Cunningham v. State*, 284 Ga. App. 739 (644 SE2d 878) (2007)); a person in another vehicle dies or suffers a serious injury (see *Ellis v. State*, 275 Ga. App. 881 (622 SE2d 89) (2005)); a pedestrian is seriously injured (*Stevenson v. State*, 264 Ga. 892 (453 SE2d 18) (1995)); or a person rendering aid to persons injured in a traffic accident dies or suffers a serious injury. See *McGrath v. State*, 277 Ga. App. 825 (627 SE2d 866) (2006). The broad language of OCGA § 40-5-55 (a) regarding who may suffer the serious injury or fatality that will trigger a request for chemical testing of the driver's bodily substances is in keeping with the legislative declaration contained in the statute that it is the general public whose welfare and safety is directly and immediately threatened by any person who drives a motor vehicle while under the influence of alcohol or drugs.

3. Appellant next contends the serious injury or fatality that triggers the second contingency of OCGA § 40-5-55 (a) must have been known prior to the request by a law enforcement officer that a driver submit to chemical testing of a bodily substance and the reading of the implied consent warning. See OCGA § 40-5-67.1 (before chemical testing, driver must be informed of the right to refuse to submit to a test), and *Cooper v. State*, 277 Ga. 282 (587 SE2d 605) (2003) (law enforcement officer must have probable cause to believe driver was driving under the influence of alcohol, drugs, or other intoxicating substance before requesting submission to chemical testing). As stated earlier, the Court of Appeals concluded the statute's language was plain and unambiguous and did not require that

the serious injury or fatality occur prior to the driver being read the implied consent warnings. We disagree with the conclusion of the Court of Appeals.

OCGA § 40-5-55 does not contain an express statement of a temporal connection between the traffic accident and the resulting serious injury or fatality. Compare OCGA § 40-6-275 (c) (drivers of vehicles involved in an accident with no *apparent* serious personal injury or death have a duty to remove the vehicles from the roadway); OCGA § 40-6-273 (driver of a vehicle involved in an accident resulting in injury to or the death of any person shall *immediately* give notice to the local police department and, in *Steele v. State*, 275 Ga. App. 651 (1) (621 SE2d 606) (2005), the Court of Appeals held the report to police was required as soon as it was known the injury was suffered); OCGA § 40-6-270 (a) (driver involved in an accident resulting in injury to or the death of any person shall *immediately* stop and return to the scene to give name, address, and vehicle registration number, and to render aid).

However, in determining whether appellant is entitled to suppression of the results of tests done with blood extracted from appellant after he was informed of the implied consent warnings, we cannot view OCGA § 40-5-55 in a vacuum because the statute is the springboard for a law enforcement officer's duties under OCGA § 40-5-67.1 to request chemical testing of a driver's bodily substances and to inform the driver of the implied consent warning. The two statutes are "in pari materia" since they relate to the same subject matter, and it is an elementary rule of statutory construction that statutes in pari materia be construed together. *Mathis v. Cannon*, 276 Ga. 16, 26 (573 SE2d 376) (2002). OCGA § 40-5-67.1 (a) requires that the law enforcement officer requesting chemical testing have "reasonable grounds to believe that the person has been driving . . . a motor vehicle . . . and the officer has arrested such person for [driving under the influence] . . . or the person has been involved in a traffic accident resulting in serious injuries or fatalities." When the second contingency of OCGA § 40-5-55 (a) is at issue, OCGA § 40-5-67.1 (a) requires that an officer, at the time the officer requests chemical testing of a driver who has not been arrested for driving under the influence, must have reasonable grounds to believe the driver was driving a motor vehicle, and the driver must have been involved in a traffic accident resulting in serious injuries or fatalities. We read OCGA § 40-5-67.1 (a) as providing the temporal connection not expressly set forth in OCGA § 40-5-55 (a) and hold that an officer's request for testing is legally viable under the second contingency only if, at the time of the request, the driver has been involved in a traffic accident that has resulted in serious injuries or fatalities of which law enforcement is aware. This is in keeping with the statutory definition

of the phrase "traffic accident resulting in serious injuries or fatalities" found in OCGA § 40-5-55 (c): "any motor vehicle accident in which a person was killed or in which one or more persons suffered a fractured bone, severe burns, disfigurement, dismemberment, partial or total loss of sight or hearing, or loss of consciousness." The statutory definition speaks in the past tense and lists injuries of which investigating law enforcement officers can gain knowledge by means of their own perceptions and the reports to the officers of persons involved in the accident, witnesses, and treating medical personnel. See *Cunningham v. State*, supra, 284 Ga. App. 739 (investigating officer quickly ascertained accident had resulted in two fatalities and requested chemical testing of driver at hospital); *State v. Umbach*, supra, 284 Ga. App. 240 (driver who lost consciousness at scene informed by officer requesting chemical testing at hospital that driver had serious injury due to loss of consciousness); *Lewis v. State*, 215 Ga. App. 796 (452 SE2d 228) (1994) (responding officers saw disfigurement to passenger's leg, a 12-inch "knot" on passenger's hip, and driver's swollen ankle). See also *Hill v. State*, 208 Ga. App. 714 (431 SE2d 471) (1993) (officer entitled to rely on nurse's report that driver was "out of it" and request testing to be done on driver he believed was unconscious under OCGA § 40-5-55 (b)).

The decision of the Court of Appeals permits law enforcement officers to request a driver who has not been arrested to submit to chemical testing and to warn the driver of the consequences of refusing to submit based on the fact that the driver has been involved in a traffic accident. However, the statutory scheme of implied consent is more narrow and, in the absence of an arrest, covers only those traffic accidents which have resulted in serious injury or death at the time the request for chemical testing is made. At the time the officer requested chemical testing of appellant and informed appellant of the implied consent warnings, law enforcement officers knew appellant had been driving a vehicle, knew the vehicle had been involved in a traffic accident, and had probable cause to believe appellant had been driving under the influence. Since, at the time chemical testing was requested, appellant had not been arrested and there was no evidence that a serious injury or fatality had resulted from the traffic accident, the request for chemical testing was invalid and the results of the chemical testing should have been suppressed. See *Hough v. State*, supra, 279 Ga. at 712 (where there has been no traffic accident resulting in serious injury or fatality and law enforcement officer has probable cause to believe driver was driving under the influence, the driver must be arrested before implied consent warnings are read in order for refusal to submit to testing can be used against driver at trial). Accordingly, we reverse the judgment of the Court of Appeals.

*Judgment reversed. All the Justices concur.*

DECIDED FEBRUARY 25, 2008.

*Brendan N. Fleming*, for appellant.
*Daniel J. Craig, District Attorney, Madonna M. Little, Assistant District Attorney*, for appellee.