A09A2083, A09A2084. THE STATE v. CARDER; and vice versa.
(689 SE2d 347)

MILLER, Chief Judge.

Tammy Faye Carder was charged with two counts of homicide by vehicle (OCGA § 40-6-393 (a)), one count of homicide by vehicle in the second degree (OCGA § 40-6-393 (c)), two counts of serious injury by motor vehicle (OCGA § 40-6-394), one count of DUI-less safe (OCGA § 40-6-391 (a) (1)), and one count of failure to maintain

---

lane (OCGA § 40-6-48). Following a pre-trial suppression hearing, the trial court suppressed Carder's refusal to take a State-administered blood test and her statements to the arresting officer at the hospital. In Case No. A09A2083, the State appeals, arguing that the trial court erred in suppressing (i) Carder's statements to the arresting officer at the hospital that were made without *Miranda* warnings because she was not then in custody and (ii) Carder's refusal to take a State-administered blood test because she was timely warned of her implied consent rights at the hospital after the arresting officer formed probable cause to arrest her for DUI-less safe. Carder cross-appeals in Case No. A09A2084, arguing that the trial court erred in refusing to suppress her statement to hospital personnel of "I know what you want the blood for, I'm not giving you my blood" because the statement was given while Carder was in custody and without having been read *Miranda* rights. As both cases involve the same operative facts, we have consolidated them on appeal.

In Case No. A09A2083, we affirm in part, finding that the trial court properly suppressed Carder's statements to the arresting officer at the hospital because Carder was in custody without having been given her *Miranda* rights prior to the officer's interrogation. We reverse in part, finding that the trial court erred in suppressing Carder's refusal to take a State-administered blood test because implied consent warnings were read as soon as practicable after the arresting officer observed Carder's physical manifestations at the hospital, which provided the requisite probable cause to arrest her for DUI-less safe. In Case No. A09A2084, we affirm because Carder's statement refusing to have her blood drawn was voluntarily made to hospital personnel and not in response to police questioning.

In reviewing a trial court's decision on a motion to suppress,

> we will not disturb a trial court's factual findings if there is any evidence to support them and, in reviewing that evidence, we defer to the trial court's judgment on issues of witness credibility and the weight to be afforded the evidence presented. We review de novo, however, the trial court's application of the law to undisputed facts.

(Citations and punctuation omitted.) *State v. Rish*, 295 Ga. App. 815 (673 SE2d 259) (2009).

So viewed, the evidence shows that on June 18, 2005, at approximately 3:52 p.m., Corporal Chris Shelton, an accident investigator with the Forsyth County Sheriff's Office, responded to the scene of a two-car accident on Highway 369, which occurred at approximately 2:30 p.m. Upon his arrival, Shelton noticed that a

female driver in one of the vehicles was deceased, and briefly made contact with Carder, who was the only person seated in the second vehicle. When his superior officer notified him that Carder had requested medical attention, Shelton returned to check on her and detected an odor of alcohol about her person. Shelton asked Carder if she had been drinking, and she indicated that she had some wine at lunch. Shortly thereafter, Carder told Shelton that she wanted to go to the hospital "to be checked out." At approximately 4:32 p.m., Carder was transported to Northeast Georgia Medical Center. Shelton remained at the scene to complete his investigation of the accident before proceeding to the hospital. Shelton arrived at the hospital at approximately 6:06 p.m. and spoke briefly with Carder, who was receiving medical attention from hospital staff, before leaving to speak with other individuals involved in the accident. At approximately 6:19 p.m., Shelton learned that Carder was attempting to leave the hospital and directed hospital staff to prevent her departure because he was trying to find her. In a hospital trauma room, Shelton questioned Carder for approximately 48 minutes about the accident, then read implied consent warnings at 7:13 p.m. and asked that she submit to a State-administered blood test, which she refused. Prior to such questioning, Nurse Susan Moody, who was present in the hospital room, attempted to draw Carder's blood for medical diagnostic purposes, but Carder would not permit her to do so, stating that she was a nurse and "I know what you want the blood for, I'm not giving you my blood."

### Case No. A09A2083

1. The State argues that the trial court erred in suppressing Carder's statements to Shelton at the hospital because Carder was not in custody, but was being held pursuant to the hospital's authority. We disagree.

"The issue of whether one is in custody for *Miranda* purposes is a mixed question of law and fact, and the trial court's determination will not be disturbed unless it is clearly erroneous." (Citations and punctuation omitted.) *Pinckney v. State*, 259 Ga. App. 309, 310-311 (1) (576 SE2d 574) (2003).

"In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." (Citations and punctuation omitted.) Id. We examine the circumstances to determine what a reasonable person would have understood in the situation. *Turner v. State*, 233 Ga. App. 413, 415 (1) (a) (504 SE2d 229) (1998).

Here, the trial court suppressed Carder's statements to Shelton at the hospital except for her admission that she was the driver of her vehicle, finding that Shelton's order to detain Carder "ripened into a custodial arrest and *Miranda* warnings were required prior to any further questioning of [Carder] by [Shelton] at the hospital." We find that a reasonable person in Carder's position would have believed that she was being restrained to the degree associated with a formal arrest, when pursuant to a police request, hospital staff prevented her from leaving the hospital after she refused medical treatment. Shelton then located Carder and a nurse in the emergency room and escorted them to a hospital trauma room, where he questioned Carder about the accident for 48 minutes. *Pinckney*, supra, 259 Ga. App. at 311 (1). Thus, the trial court was authorized to conclude that Carder's presence in the trauma room was "more investigative than medical." Compare *Robinson v. State*, 278 Ga. 299, 301-302 (2) (602 SE2d 574) (2004) (defendant had not been released from medical treatment or told by medical personnel that he could leave the hospital; nor was defendant isolated by police or asked any pre-*Miranda* questions about club shooting). As such, the interrogation before the giving of the mandated warnings was clearly in violation of *Miranda*. See *Turner*, supra, 233 Ga. App. at 414 (1) (a) (custodial interrogation is defined as "questioning initiated by law enforcement after a person has been taken into custody or otherwise deprived of her freedom of action in any significant way") (citations and punctuation omitted). Construing the evidence in the light most favorable to the trial court's findings and judgment, we cannot say that its decision was clearly erroneous. *Pinckney*, supra, 259 Ga. App. at 310-311 (1).

2. The State argues that the trial court erred in suppressing Carder's refusal to take the State-administered blood test because Shelton did not have a duty to advise Carder of her implied consent rights until he had probable cause to arrest her for DUI-less safe, which occurred when he observed her physical manifestations in the hospital room. We agree.

The implied consent statute authorizes chemical testing of the bodily substances of a driver who is involved in a traffic accident which results in serious injuries or fatalities. OCGA § 40-5-55 (a); *Ellis v. State*, 275 Ga. App. 881, 882 (1) (622 SE2d 89) (2005). When an individual is killed in a traffic accident, a law enforcement officer is not required to read implied consent warnings unless and until he has "probable cause to believe that the person asked to submit to testing was driving under the influence of alcohol, drugs, or other intoxicating substance. [Cit.]" *Snyder v. State*, 283 Ga. 211 (657 SE2d 834) (2008); OCGA §§ 40-5-67.1 (a), 40-5-55 (a) and (c).

Here, the underlying facts are undisputed regarding Shelton's observations of Carder at the accident scene and the hospital. Thus, we apply a de novo standard of review to the trial court's application of law to the facts. In concluding that Shelton should have read implied consent warnings "the moment [he] arrived at the hospital[,]" the trial court specifically found that Shelton had probable cause to arrest Carder at the accident scene but her request for medical attention was an attenuating factor which prevented an earlier reading. This determination was based on Shelton's knowledge that Carder was the driver of her vehicle, smelled of alcohol, and had recently consumed wine at lunch. The trial court's finding, however, is erroneous because the mere consumption of alcohol is insufficient to show probable cause for DUI-less safe. See *Rish*, supra, 295 Ga. App. at 816-817 ("Because individual responses to alcohol vary, the presence of alcohol in a defendant's body, by itself, does not support an inference that the defendant was an impaired driver"); *State v. Gray*, 267 Ga. App. 753, 755 (2) (600 SE2d 626) (2004) (in order to have probable cause for a DUI arrest, an officer must "have knowledge or reasonably trustworthy information that a suspect was actually in physical control of a moving vehicle, while under the influence of alcohol *to a degree which renders him incapable of driving safely*") (citation and punctuation omitted; emphasis in original).

And the trial court's finding to the contrary notwithstanding, Carder was being treated by hospital staff when Shelton first arrived at the hospital, making it impracticable for Shelton to read the implied consent warnings to Carder at that time. Nor could Shelton be present during her medical treatment. See *Townsend v. State*, 236 Ga. App. 530, 531-532 (1) (b) (511 SE2d 587) (1999) (holding that exigencies of police and medical work prevented the officer from giving the implied consent warning earlier and officer did read implied consent warnings at next available opportunity). Moreover, Shelton did not have probable cause to arrest Carder for DUI-less safe until he interviewed her in the trauma room, which was the next available opportunity he had to speak with her. During that conversation, Carder repeated questions to the officer and had a flushed face, glossy eyes, slurred speech, and a lingering odor of alcohol about her person. The fact that Carder was the only person in her vehicle at the accident scene and her admission that she had been drinking at that time, together with her physical manifestations at the hospital, provided Shelton with probable cause to believe that Carder had been driving under the influence. See *Boyd v. State*, 259 Ga. App. 864, 865-866 (1) (578 SE2d 472) (2003) (erratic driving, bloodshot eyes, slurred speech showed impaired driving ability); *Gray*, supra, 267 Ga. App. at 755 (2). And Shelton's failure to give

*Miranda* warnings during his questioning of Carder did not vitiate his testimony about her physical manifestations. See *State v. Carraway*, 251 Ga. App. 469, 470 (554 SE2d 602) (2001) (officer's failure to give *Miranda* warnings does not require suppression of his testimony regarding his observations of defendant at scene of traffic stop). Further, Carder has not shown that an earlier reading of the warnings would have benefitted her. See *Townsend*, supra, 236 Ga. App. at 532 (1) (b).

Given that Shelton did not have probable cause to arrest Carder for DUI-less safe until he observed Carder display signs of an impaired driver at the hospital, the trial court erred in finding that Shelton "unnecessarily delayed the reading of implied consent warnings." See *Snyder*, supra, 283 Ga. at 213. Accordingly, we reverse the trial court's suppression of Carder's refusal to submit to a State-administered blood test.

### Case No. A09A2084

3. Carder argues that the trial court erred in not suppressing her statement "I know what you want the blood for, I'm not giving you my blood" because she was in custody and had not been given *Miranda* warnings. We disagree.

Here, there is no evidence that Moody was acting under Shelton's direction when she sought to draw Carder's blood for medical diagnostic purposes. When Carder blurted out the foregoing statement in response to Moody's attempt to take her blood, Shelton had not yet read implied consent warnings or initiated questioning to Carder about the accident. Although Shelton was present in the room and overheard Carder's statement, her statement was volunteered and not the product of any questioning by Shelton. See *State v. Davison*, 280 Ga. 84, 87-88 (2) (623 SE2d 500) (2005) ("[v]oluntary, spontaneous outbursts that are not made in response to any form of custodial questioning or interrogation are admissible at trial") (citation and punctuation omitted).

To the extent Carder argues that her statement was protected by the privilege against self-incrimination, we disagree. "The privilege against self-incrimination protects an accused only from being compelled to testify against herself, or otherwise to provide the state with evidence of a testimonial or communicative nature." *Scanlon v. State*, 237 Ga. App. 362, 363 (1) (514 SE2d 876) (1999). "It is the extortion of information from the accused [or] the attempt to force him to disclose the contents of [her] own mind that implicates the Self-Incrimination Clause. . . ." (Citations and punctuation omitted.) *Pennsylvania v. Muniz*, 496 U. S. 582, 594 (III) (B) (110 SC 2638, 110 LE2d 528) (1990). Given that Moody was not attempting to secure a

communication from Carder when she asked to draw her blood, Carder's privilege against self-incrimination was not implicated. Id. As such, the trial court did not err in finding Carder's statement admissible.

*Judgments affirmed in part and reversed in part in Case No. A09A2083. Judgment affirmed in Case No. A09A2084. Andrews, P. J., and Barnes, J., concur.*

DECIDED DECEMBER 11, 2009 —
RECONSIDERATION DENIED JANUARY 11, 2010 —

*Penny A. Penn, District Attorney, Jennifer L. Scalia, Assistant District Attorney*, for appellant.

*Banks, Stubbs, Neville & Cunat, Rafe Banks III*, for appellee.